Argued March 14; reversed April 2, 1940

# WOOLLEY *v.* HINER
(100 P. (2d) 608)

In Banc.

*W. A. Stockman*, of Portland (F. S. Senn, of Portland, on the brief), for appellant.

*A. E. Wheelock*, of Portland (C. E. Wheelock, of Portland, on the brief), for respondent.

BELT, J. Plaintiff, who is 75 years of age and has been in the business of selling insurance for approximately twenty years, commenced this action to recover damages aggregating $45,000 on account of a letter written by defendant of and concerning him to his em-

ployer, the Guarantee Mutual Life Company of Omaha, Nebraska. The letter is as follows:

"April 19, 1938.

"Guarantee Mutual Life Company,
Omaha, Nebraska.

"Gentlemen:

"You have as one of your Special Agents working out of Portland, Oregon, Mr. Frank W. Wooley, who gives his address as 1680 State Street, Salem, Oregon, also 147 Couch Building, Portland, Oregon.

"The reason for this letter is of his activity against our Society. I understand that there is *a law against twisting and issuing misrepresentations* and in order that you may understand this particular situation, I will give you a brief statement.

"Our Society, like many other fraternal societies, has always operated on a very low rate, on the assessment basis. Your Special Agent, Mr. Woolley's wife belonged to our Society for a good many years, and when it became necessary to readjust and place ourselves on the legal reserve basis, we met with much opposition from Mr. Woolley. He has gone so far as to place an advertisement in the Salem paper, copy of which I attach herewith.

"At a meeting held Saturday night, called by him, in Portland, he made some statements against our Society that are erroneous and asked for contributions of money in order to fight us on this change of rate basis.

"He is a gentleman 75 years old and while he is your Special Agent I cannot help but feel that he does not thoroughly understand insurance, or he would not advocate such a play as he proposes to our old people, namely, that all those who are 60 years of age or over, be rated as of age 58 on a net cost basis.

"I called two different meetings of our Attorney, our Actuary and a representative of the Oregon Insurance Department, to talk the matter over with Mr. Woolley and we feel that we have been very reasonable

in granting him interviews and giving him information he desired.

"I do not want to refer this to the Commissioner of Insurance without first advising you.

"Please advise me if it is the policy of your Company *to permit your agents to attempt to tear down other companies.* (Italics ours.)

"Very truly Yours,

"Minnie Hiner,
Grand Guardian,
Neighbors of Woodcraft."

"MH: FR: FMT

Plaintiff in his complaint alleges that the above letter falsely and maliciously charges him with having committed the crime of "twisting"—a term known in insurance circles as the violation of the provisions of sections 46-142 and 46-511, Oregon Code 1930.

Plaintiff further alleges in substance that, by reason of the above defamatory letter, his agency to sell insurance was cancelled; he has been deprived of the means of earning a livelihood; and has been subjected to public humiliation and contempt.

The defendant entered a plea of justification, thereby confessing publication of the letter, but seeking to avoid the consequences thereof by asserting the truth of the charge. In her answer the defendant specifically set forth the alleged false and malicious representations which she asserts the plaintiff made concerning the Neighbors of Woodcraft, a fraternal insurance corporation of which she was the "Grand Guardian". Defendant avers that plaintiff charged her and other officers of the Neighbors of Woodcraft "with being corrupt and dishonest" in the carrying on of the business of the fraternal organization. Defendant further avers that

plaintiff charged that, in changing its plan of operation, the organization was defrauding plaintiff's wife and other members; that the premium rate was "exorbitant, confiscatory, fraudulent, and dishonest"; and that the officers of the fraternal organization "had unlawfully expended the funds of said society for illegal purposes." The defendant further alleged that:

"Based upon the foregoing allegations, this defendant alleges that the plaintiff was prior to April 19, 1938, guilty of twisting as defined in Section 46-142, Oregon Code 1930, and that the statements, matters and things set forth and contained in the letter described in plaintiff's complaint with relation thereto were true."

At the conclusion of plaintiff's case in chief, the court allowed defendant's motion for a nonsuit. From the judgment dismissing the action, the plaintiff appeals.

■■ In view of the plea of justification, we have no hesitancy in holding that the letter is libelous per se. According to the construction which defendant herself has given to the letter, it charges plaintiff with the commission of a crime. It is immaterial that the crime charged is only a misdemeanor: *Peck v. Coos Bay Times Pub. Co.*, 122 Or. 408, 259 P. 307. It is well established that words which impute the commission of a crime are actionable per se: *Barnett v. Phelps*, 97 Or. 242, 191 P. 502, 11 A. L. R. 663; *Woolley v. Plaindealer Publishing Co.*, 47 Or. 619, 84 P. 473, 5 L. R. A. (N. S.) 498. It also contains defamatory language concerning the business or trade in which plaintiff was engaged.

■ Since the letter is libelous per se, malice and damages are presumed. The publication of the letter having been admitted, it follows that plaintiff established a prima facie case. Counsel for defendant practically

concedes that a case was established sufficient for submission to the jury if it were not for other uncontradicted testimony relative to representations made by plaintiff and articles published by him in reference to the Neighbors of Woodcraft. In other words, counsel contends that plaintiff himself established the truth of the charges made against him by defendant.

Section 46-142, Oregon Code 1930, provides:

"It shall be unlawful for any person to make, verbally or otherwise, publish, print, distribute or circulate, or cause the same to be done, or in any way to aid, abet or encourage the making, printing, publishing, distributing or circulating of, any pamphlet, circular, article, literature, comparison or statement of any kind of any insurance company, association or fraternal society now or hereafter doing business in this state, *which contains any false or malicious criticism or false or malicious statement designed to injure such company in its reputation or business*; and any person violating the provisions of this section shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not more than one hundred dollars ($100.00)." (Italics ours.)

■ Defendant contends that plaintiff is guilty of "twisting" in that he violated the provisions of the above section of the statute. Section 46-511, Oregon Code 1930, prohibits "rebates, twisting, and discrimination" by those engaged in insurance business. However, we think the latter section has no application to the facts in this case and should be eliminated from consideration. Under no theory of the case was plaintiff attempting to have his wife, the insured, give up her policy in the Neighbors of Woodcraft for the purpose of taking insurance in another company: See *Brandt v. Beha*, 217 App. Div. 644, 216 N. Y. S. 178, where the

practice of "twisting" was under consideration. The only evidence in the record as to the meaning of the word "twisting" among those engaged in the insurance business was that of the plaintiff, who testified:

"Why, if they twist a policy it means that they have used unlawful and false statements in trying to get a person dissatisfied with a contract they have and take them in their own company to save money."

In response to the question, "You were not trying to get these old members out of the Woodmen of the World, I mean Neighbors of Woodcraft, into some other organization, were you?", the plaintiff answered, "No."

■ The vital question is: Can it be saïd as a matter of law that plaintiff made false or malicious representations, "designed to injure such company (Neighbors of Woodcraft) in its reputation or business"? We think section 46-142, Oregon Code 1930, does not purport to infringe upon the right of free speech by prohibiting fair comment and criticism. The legislature was endeavoring to protect legitimate business against false and malicious statements.

Plaintiff was the beneficiary under a policy dated February 9, 1898, which his wife had carried with the Neighbors of Woodcraft. When his wife first started paying assessments on the policy of $2,100, the premium amounted to eighty cents a month. After the organization changed its method of insurance from assessments to the legal reserve plan, to take effect as of January 1, 1938, the insured was required to pay $16.37 a month, which she refused to do and abandoned the policy. The evidence shows that numerous other old members were obliged to abandon their policies on account of the high premium rates. Plaintiff says in effect that he under-

took to champion the cause of these old people and had proposed a plan to the officers of the Neighbors of Woodcraft which he thought was fair and equitable. Several meetings were held protesting against the increase in rates and a small amount of money was collected to carry on the campaign. It is only fair to say that plaintiff never collected the money nor did any of it come into his hands. He did, however, make a small contribution to "carry on the work."

Plaintiff, on cross-examination, admitted having caused the publication of several advertisements in newspapers, attacking the officers of Neighbors of Woodcraft on account of increased rates. In the Oregon Statesman of Salem, Oregon, under date of March 31, 1938, the following notice—paid for by plaintiff—appeared:

"Neighbors of Woodcraft Join Mass Protest against Confiscatory Method of Grand Lodge officers. Read Article 11 in their so-called policy. Send name of circle and Certificate No. to Room 117, Couch Building, Portland, Oregon.

"Frank W. Woolley."

In the Oregon Journal of Portland, Oregon, issues dated March 26th, 27th, and 28th, plaintiff paid for the following advertisement:

"PERSONALS

"NEIGHBORS of Woodcraft, why bite and put necks in same noose? Send cert. No. Join mass protest of Shylock methods of grand officers.

"T-177, Journal."

Plaintiff wrote the following post card to May D. Trembly, who apparently had corresponded with him relative to advertisement in newspaper:

"Dear Madam: Thanks for your letter in answer to my add. I am the husband of one of the old members

who paid in for many years, and am looking into the subject to see what can be done to remedy what I consider to be a great injustice. I have retained an attorney —Mr. Elmo S. White, 417 Couch Building, Portland— to advise me, and intend knowing more about this thing before I am through. Could you arrange to visit the office, with some of your friends? We could then talk over the facts more fully. I am desirous of securing as many supporters as may be in order to make as good a showing of interest as possible before the State Ins. Commr., and of possibly bringing the matter to the attention of the Courts. What is the number of your certificate?

"Respectfully,

"Frank W. Woolley."

Plaintiff was cross-examined at length concerning his intention in causing the publication of the above advertisements and the statements made by him in reference to the increase in the rates. Witness the following portions of the record:

"Q. I ask you what you meant in that advertisement when you say 'Join mass protest against confiscatory method of Grand Lodge Officers'. What did you mean by that? A. I meant just what it said, that these old members to sign a protest against the appropriation of the four million nine hundred thousand dollars that belongs to them.

*    *    *    *    *

"Q. When you made that statement or put that advertisement in the paper, you meant to say that the officers of the Neighbors of Woodcraft, including the defendant, were themselves guilty of fraud, did you? A. Not that way.

"Q. What way? A. That the organization, that the fraternal organization was taking the share, the four million nine hundred thousand dollars away from these poor old people into the thousands, Mrs. Woolley's included. The records show something like over eight

thousand last year dropped out on account of the excessive rates put onto them when they couldn't pay it.

\*　　　\*　　　\*　　　\*　　　\*

"Q. Did you not know that when you put that advertisement in the paper you were violating the statute of Oregon as it had relation to insurance? A. Absolutely no.

"Q. You didn't know that? A. No, I didn't.

"Q. When you put that advertisement in the paper what was your intention? A. My intention was to call the attention to these poor old people that had been denied their insurance by the exorbitant rate that they proposed to put on them.

"Q. Was it your intention to make an attack upon the Neighbors of Woodcraft? A. No; it was just to get what they were entitled to, to get them to sign a protest.

\*　　　\*　　　\*　　　\*　　　\*

"Q. Whom were you going to protest to? A. The Insurance Commissioner.

"Q. Did you so protest? A. We did.

\*　　　\*　　　\*　　　\*　　　\*

"Q. Did you know at the time that the Insurance Commissioner of Oregon had affirmed and approved the acts with reference to insurance of the Neighbors of Woodcraft? A. Yes.

\*　　　\*　　　\*　　　\*　　　\*

"Q. Did you not intend to cause them trouble and expense? A. No.

\*　　　\*　　　\*　　　\*　　　\*

"Q. Then when you say that the 'Neighbors of Woodcraft, why bite and put their necks in the noose', what did you mean? A. I meant they were going back under the same rule if they accepted the raise in these exorbitant rates which they couldn't pay, absolutely.

\*　　　\*　　　\*　　　\*　　　\*

"A. I meant that their new rates were prohibitory and were barring them out of that $4,900,000 that they created.

"Q. And in setting up that rate you meant that they had confiscated the assets of the company? Is that correct? A. Practically so, yes.

"Q. Well, was it so in your mind? A. Yes.

\*　　　\*　　　\*　　　\*　　　\*

"Q. And when you placed these advertisements in the paper, Mr. Woolley, you then had that same kindly spirit towards the officers of the Neighbors of Wood-craft that you said you had when you called on them in the building, didn't you? A. I did."

■ In the light of this record can it be said as a matter of law that plaintiff was guilty of the crime of "twisting"? Did plaintiff make false and malicious statements designed to injure the business in which the defendant was the principal officer? If different reasonable inferences can be drawn from the evidence, relative to such issues—keeping in mind that plaintiff is presumed to be innocent of crime—the question was for the jury to decide. Of course, if the only reasonable deduction that can be made from the evidence is that plaintiff is guilty of the crime charged, the granting of the motion for nonsuit must be sustained. The burden of proving the truth of the charge by a preponderance of the evidence rested upon the defendant. We agree with counsel for defendant, that, in such cases, the truth of the charge may be established by plaintiff's own evidence or by evidence received in the case in chief: 37 C. J. 85. We cannot, however, concur in the view that it can be said, as a matter of law, that the notices caused to be published by plaintiff are false or malicious and were designed to injure the Neighbors

of Woodcraft. Viewing the evidence in the light most favorable to plaintiff, we think it was a question of fact for the jury to decide and that the court erred in granting the motion for nonsuit.

■■ Error is assigned because the court refused to require a witness to produce a letter written by the defendant to the United States National Bank of Portland, on April 19, 1938. It was claimed by plaintiff that this letter tended to show malice on the part of the defendant. If such were true, the letter would be admissible: *Mannix v. Portland Telegram*, 136 Or. 474, 284 P. 837, 297 P. 350, 300 P. 350. The letter was in possession of the witness and had been brought into court pursuant to a subpoena. There was no merit in the objection that the letter was a privileged communication. The plaintiff was entitled to have it produced for inspection. It appears from the record that the court did not examine the letter. We know not whether it pertained to the European situation or to the plaintiff. On retrial, the letter should be produced and, if it is pertinent to the issue of malice, it should be received; otherwise it should be rejected.

■ The letter which the defendant wrote to the Oregon Journal relative to the advertisement caused to be published by plaintiff was admissible for what it was worth relative to the issue of malice.

■ We think no error was committed in striking the testimony of witness, Mrs. Gille, relative to her experience with the Neighbors of Woodcraft, as it throws no light on the question as to whether plaintiff was guilty of the crime charged.

The judgment is reversed and the cause remanded for a new trial.

BEAN, J., not sitting.