Argued and submitted July 27, reversed and remanded October 12, reconsideration denied November 25, 1983, petition for review allowed February 8, 1984 (296 Or 411)
See 298 Or 434, 693 P2d 35 (1985)

# BANK OF OREGON et al,
*Appellants,*

*v.*

# INDEPENDENT NEWS, INC. et al,
*Respondents.*

## (A 7908-03679; CA A24067)
670 P2d 616

Bernard Jolles, Portland, argued the cause for appellants. With him on the briefs was Jolles, Sokol & Bernstein, P.C., Portland.

Bruce E. Smith, Eugene, argued the cause for respondents. With him on the brief were Roger M. Saydack, and Cass, Scott, Woods & Smith, Eugene.

Charles F. Hinkle, Portland, filed a brief amicus curiae for American Civil Liberties Union of Oregon, Inc.

Jack L. Orchard, and Ball, Janik & Novack, Portland, filed a brief amicus curiae for Oregon Newspaper Publishers' Association.

Before Richardson, Presiding Judge, and Warren and Rossman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiffs in this libel action are Bank of Oregon and its president, Wadsworth. They allege that they were defamed by an article written by defendants Buel and Meeker and published in defendant Independent News, Inc.'s weekly newspaper Willamette Week. The article was based in the main on information furnished defendants by Richard Cross, a customer of the bank. A foreclosure action by the bank was pending against Cross at the time he gave the information to defendants. Defendants' article was to the general effect that plaintiffs had engaged in a series of wrongful acts to divert Cross' money and credit to another bank customer. Plaintiffs contend that defendants did not take adequate care to ascertain the truth or falsehood of Cross' charges before publishing them.

The trial court granted defendants' motion for summary judgment, and plaintiffs appeal from the resulting judgment. The principal issue is what level of culpability a plaintiff who is a "private individual" must prove against a "media defendant" to recover for libel.

The common law rule in Oregon and virtually all other jurisdictions is that defamations ascribing "to the defamed party characteristics or conduct that would adversely affect his fitness for his occupation or profession" are actionable *per se. Benassi v. Georgia-Pacific,* 62 Or App 698, 705, 662 P2d 760, *modified* 63 Or App 672, 667 P2d 532 (1983); *see also Cook v. Safeway Stores, Inc.,* 266 Or 77, 511 P2d 375 (1973); *Murphy v. Harty,* 238 Or 228, 393 P2d 206 (1964). Accordingly, a presumption of malice and of general damage to reputation arises from the making of the defamation alone, and direct proof of culpability on the part of the defendant is unnecessary. *Woolley v. Hiner,* 164 Or 161, 165, 100 P2d 608 (1940); *Peck v. Coos Bay Times Pub. Co. et al.,* 122 Or 408, 259 P 307 (1927); *see Gertz v. Robert Welch, Inc.,* 418 US 323, 346-47, 349, 94 S Ct 2997, 41 L Ed 2d 789 (1974).[1]

---

[1] Plaintiffs here, like the Court in *Gertz, see* 418 US at 346-47, characterize the common law rule as one of "strict liability" or "liability without fault." That characterization is an oversimplification or an overstatement, but it is correct that the rule permits a plaintiff to make out a prima facie case of libel without *direct* proof of the defendant's culpability other than the publication of the defamation.

However, a series of United States Supreme Court decisions, beginning with *New York Times Co. v. Sullivan,* 376 US 254, 84 S Ct 710, 11 L Ed 2d 686 (1964), hold that the First Amendment requires more of a showing of culpability than the common law does to support a judgment for libel against a media defendant (*e.g.,* a publisher or broadcaster). The Court held in *New York Times* that a public official cannot recover

> "* * * damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false of not. * * *" 376 US at 279-80.

Although it is not wholly clear from the *New York Times* opinion, later statements by the Supreme Court indicate that the "reckless disregard" part of the actual malice test is a subjective rather than an objective standard. *See St. Amant v. Thompson,* 390 US 727, 731, 88 S Ct 1323, 20 L Ed 2d 262 (1968) (statement must be made with "high degree of awareness * * * of probable falsity," and defendant must have "entertained serious doubts as to the truth of his publication").

In *Curtis Publishing Co. v. Butts,* 388 US 130, 87 S Ct 1975, 18 L Ed 2d 1094 (1967), the Court extended the actual malice standard to libel actions by "public figures" against media defendants. Four years later, a plurality of the Court concluded in *Rosenbloom v. Metromedia,* 403 US 29, 91 S Ct 1811, 29 L Ed 2d 296 (1971), that the actual malice rule applies even to actions by "private individuals" (*i.e.,* persons who are not public officials or public figures) if the subject of the defamation is one "of public or general interest." 403 US at 43. In *Gertz v. Robert Welch, Inc., supra,* the Court rejected the plurality's conclusion in *Rosenbloom* and held

> "* * * that, so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual. * * *" 418 US at 347.

■ The principal rationale for *New York Times* is that, in the context of political debate and communication about public officials, the First Amendment requires that erroneous statements "must be protected if the freedoms of expression

are to have the 'breathing space' that they 'need . . . to survive.' " 376 US at 271-72 (citing *N. A. A. C. P. v. Button,* 371 US 415, 433, 83 S Ct 328, 9 L Ed 2d 405 (1963)). That premise has been adhered to in the Supreme Court's later cases. The Court said in *Gertz* that "[t]he First Amendment requires that we protect some falsehood in order to protect speech that matters." 418 US at 341. However, the Court concluded in *Gertz* that the appropriate balance between First Amendment protection of the media and the right of redress for libel differs when those defamed are private individuals rather than public officials or public figures. The Court explained:

"More important than the likelihood that private individuals will lack effective opportunities for rebuttal, there is a compelling normative consideration underlying the distinction between public and private defamation plaintiffs. An individual who decides to seek governmental office must accept certain necessary consequences of that involvement in public affairs. He runs the risk of closer public scrutiny than might otherwise be the case. And the society's interest in the officers of government is not strictly limited to the formal discharge of official duties. * * *

"\* \* \* \* \*

"\* \* \* [T]he communications media are entitled to act on the assumption that public officials and public figures have voluntarily exposed themselves to increased risk of injury from defamatory falsehood concerning them. No such assumption is justified with respect to a private individual. He has not accepted public office or assumed an 'influential role in ordering society.' * * * He has relinquished no part of his interest in the protection of his own good name, and consequently he has a more compelling call on the courts for redress of injury inflicted by defamatory falsehood. Thus, private individuals are not only more vulnerable to injury than public officials and public figures; they are also more deserving of recovery." 418 US at 344-45.[2] (Citation omitted.)

---

[2] Justice White dissented in *Gertz.* He noted that he "continue[s] to subscribe to the *New York Times* decision and those decisions extending its protection to defamatory falsehoods about public persons." 418 US at 398. However, he disagreed with the majority's conclusion that there was a constitutional foundation for requiring a private individual to prove negligence in addition to establishing the common law elements of libel. He stated:

"\* \* \* The law governing the defamation of private citizens remained untouched by the First Amendment because until relatively recently, the consistent view of the Court was that libelous words constitute a class of speech

The only First Amendment *requirement* relevant to this appeal is that, in a libel action by a private individual against a media defendant, the plaintiff must prove that the defendant was at least negligent in failing to ascertain whether the defamatory publication was true or false.[3] The states *may* establish a higher standard of liability. Plaintiffs argue that negligence is the appropriate standard; defendants argue that the *New York Times* actual malice standard should apply. In granting defendants' motion for summary judgment, the trial court adopted a "gross negligence" standard; as defined by the trial court, that standard is in effect the *New York Times* rule, modified by an objective rather than a subjective definition of "reckless disregard."

■     Before we turn to the principal issue, two preliminary matters must be addressed. First, defendants argue that plaintiffs are public figures and are therefore subject to the actual malice standard, regardless of whether that standard applies in libel actions by private individuals.[4] The trial court concluded that plaintiffs are not public figures. We agree.

---

wholly unprotected by the First Amendment, subject only to limited exceptions carved out since 1964.

"But now, using that Amendment as the chosen instrument, the Court, in a few printed pages, has federalized major aspects of libel law by declaring unconstitutional in important respects the prevailing defamation law in all or most of the 50 States. That result is accomplished by requiring the plaintiff in each and every defamation action to prove not only the defendant's culpability beyond his act of publishing defamatory material but also actual damage to reputation resulting from the publication. Moreover, punitive damages may not be recovered by showing malice in the traditional sense of ill will; knowing falsehood or reckless disregard of the truth will now be required.

"I assume these sweeping changes will be popular with the press, but this is not the road to salvation for a court of law. As I see it, there are wholly insufficient grounds for scuttling the libel laws of the States in such wholesale fashion, to say nothing of depreciating the reputation interest of ordinary citizens and rendering them powerless to protect themselves. * * *" 418 US at 370.

[3] The Court also held in *Gertz* that punitive damages could not be recovered in a libel action against a media defendant, at least absent a showing of actual malice. 418 US at 349-50. In *Wheeler v. Green,* 286 Or 99, 117-19, 593 P2d 777 (1979), the Oregon Supreme Court held that punitive damages could not be assessed against *any* defamation defendant under any circumstances consistently with Article I, section 8 of the state constitution.

[4] Whether plaintiffs are public figures is, *at least* preliminarily, a question for the court. *See Wheeler v. Green,* 286 Or 99, 111, n 7, 593 P2d 777 (1979), and authorities there cited.

In *Wheeler v. Green,* 286 Or 99, 111-17, 593 P2d 777 (1979), the Oregon Supreme Court traced the development of the public figure doctrine from *Curtis Publishing Co. v. Butts, supra,* through *Time, Inc. v. Firestone,* 424 US 448, 96 S Ct 958, 47 L Ed 2d 154 (1976), and demonstrated that the United States Supreme Court had narrowed the public figure category substantially in the later cases. It is unnecessary to repeat that demonstration here, but we do note that the narrowing trend described in *Wheeler* has continued in the United States Supreme Court's and most other courts' decisions subsequent to *Wheeler.*

Defendants argue that the bank "has been drawn into a controversy about its operations" and that

"Plaintiff Bank contends in part that it cannot be considered a public figure because it has not 'voluntarily [injected itself] . . . into a particular public controversy,' *Gertz v. Robert Welch, Inc., supra,* 418 US at 351, 94 S Ct 3013, 41 L Ed 2d at 812. However, Plaintiffs fail to acknowledge that voluntary injection into public controversy is not the only means of attaining public figure status. *Gertz* also recognizes that a person may become a public figure for a limited range of issues by virtue of having been 'drawn into a particular public controversy.' *Id.* at 351. * * *"

Whatever distinction the Court may have intended between an "individual voluntarily inject[ing] himself" into a controversy and his being "drawn into" one, the Court's ultimate explanation for holding that Gertz was not a public figure makes no reference to involuntary involvement in public controversies. It said:

"* * * [Gertz] plainly did not thrust himself into the vortex of this public issue, nor did he engage the public's attention in an attempt to influence its outcome. * * *" 418 US at 352.

In any event, it is clear that a defamatory statement in itself cannot make the defamed person a public figure by reason of the controversy the defamation engenders. *See Hutchinson v. Proxmire,* 443 US 111, 135, 99 S Ct 2675, 61 L Ed 2d 411 (1979); *Bruno & Stillman, Inc. v. Globe Newspaper Co.,* 633 F2d 583 (1st Cir 1980). We find nothing in the record to suggest that the bank has been drawn into any controversy except the one created by defendants' publication.

■    Defendants also argue that the bank is a public figure because it is a "large publically held banking corporation" that is subject to extensive federal and state regulation. We conclude that the bank, like the corporate plaintiff in *Bruno & Stillman, Inc. v. Globe Newspaper Co., supra,* is a "paradigm middle echelon, successful" business, 633 F2d at 592, and is not a public figure by reason of engaging in that business, being subject to the routine or usual regulation of that business or being incorporated. *See Bruno & Stillman, Inc. v. Globe Newspaper Co., supra,* 633 F2d at 586-92; *Vegod Corp. v. American Broadcasting Company, Inc.,* 25 Cal 3d 763, 160 Cal Rptr 97, 603 P2d 14 (1979), *cert den* 449 US 886 (1980).[5]

Defendants' final basis for contending that the bank is a public figure is that its size and concomitant ability "to respond to accusations against it" make it one. Defendants' argument is based on language in *Gertz:*

"* * * Public officials and public figures usually enjoy significantly greater access to the channels of effective communication and hence have a more realistic opportunity to counteract false statements than private individuals normally enjoy. Private individuals are therefore more vulnerable to injury, and the state interest in protecting them is correspondingly greater." 418 US at 344. (Footnote omitted.)

Defendants' argument simply postulates that the bank has "access to * * * channels of effective communication" of the kind public figures enjoy. We find and defendants point to nothing in the record that convinces us the bank has any exceptional capacity to excite or procure the attention of any media outlet other than defendants' newspaper. The "access to * * * channels of * * * communication" discussion in *Gertz* describes a consequence of being a public figure. There

---

[5] Defendants also state:

"* * * In addition, public figures are less deserving of constitutional protection because they have 'voluntarily exposed themselves to increased risk of injury from defamatory falsehood concerning them.' *Gertz v. Robert Welch, Inc., supra,* 418 US at 345, 94 S Ct at 3010, 41 L Ed 2d at 808. Plaintiff Bank by opening its doors to the public and dealing with that public as a fiduciary has entered the public arena and exposed itself to the risk of criticism."

That argument may or may not be intended as a separate one from the argument discussed in the text. In either event, *Bruno & Stillman, Inc. v. Globe Newspaper Co., supra,* is contrary to the suggestion that engaging in and advertising a business are enough to make a person a public figure for purposes of a "controversy" about his business activities which is generated by the defamation itself.

can be cases where the plaintiff's extraordinary access to the media is a factor to weigh in determining whether the plaintiff is a public figure, *see Hutchinson v. Proxmire, supra,* 443 US at 136, but this is not such a case, because there is nothing to weigh.

Defendants' arguments for finding the bank to be a public figure are not persuasive, individually or collectively. Their independent arguments that Wadsworth is a public figure are patently unmeritorious. Both plaintiffs are "private individuals."

■      The second preliminary matter is whether plaintiffs are entitled to argue here that negligence is the appropriate standard of culpability, given the facts that they alleged only actual malice and that the trial court denied their motion for leave to amend their complaint to allege negligence. The trial judge denied the motion after he had concluded that gross negligence was the standard of liability. The question is whether the denial of the motion was based *solely* on that substantive conclusion and on the court's resulting view that an amended complaint alleging ordinary negligence would not state a claim, or whether the denial was also based in part on a discretionary decision that the motion should not be allowed because of the late stage in the proceedings at which it was made. The answer to that question determines whether we may review the trial court's substantive conclusion or may only review the ruling on the motion only for an abuse of discretion. *See Baker v. Brookmead Dairy, Inc. et al,* 230 Or 384, 386-88, 370 P2d 235 (1962).

The trial court's written order denying the motion was clearly predicated only on the substantive issue. It states that

"'* * * plaintiffs' motion to amend their complaint to allege negligence is denied because negligence is not a proper basis of liability in this defamation case between a private plaintiff and a media defendant involving an issue of public impor- tance."

It is not *as* certain from the court's colloquy in argument with counsel that the substantive issue was the sole basis for the ruling. Early in that colloquy, the judge indicated that he would deny the motion because he regarded it as untimely. Plaintiffs' attorney then spoke at length, urging the court to

change the ruling. The following exchange then took place between the court and counsel for the parties:

"THE COURT: Suppose I deny the motion to amend and the reason I deny it is for the same reason Judge Crookham struck in another case a pleading which had a negligence [allegation,] because he felt in that case that actual malice was the standard. And suppose I allow the amendment and then struck it?

"MR. BROWN [Defendants' counsel]: * * * Your Honor, there are four factors that the Courts consider when they decide they're going to allow an Amended Complaint or not to allow it; and two of them have to do with whether there was a delay, what the reason or cause for delay, and * * * whether there was prejudice to a non-moving party.

"And other factors the courts look to is does the claim, the amendment state a claim for relief, would the * * * party be entitled to relief upon the amended allegation.

"And perhaps Your Honor could use that rationale in denying it.

"THE COURT: On the basis they didn't state whether it was true or false; is that what you're saying"

"MR. BROWN: On the basis that the negligence allegation does not state a claim for relief.

"THE COURT: Yes.

"*MR. BROWN: And therefore you're not going to allow that the allegation be pleaded at this point and perhaps that would take care of Mr. Jolles' [plaintiffs' counsel] problem because he could go up [on appeal].*

"MR. JOLLES: Not state a claim for relief because negligence is not a proper standard.

"*MR. BROWN: Mr. Jolles could go up on an appeal and say, yes it does.*

"*THE COURT: That seems a workable solution. All right.*

"MR. JOLLES: I don't want anybody to think I agree with it.

"THE COURT: No, I appreciate it.

"All right, gentlemen, I feel that — let me tell you that I will not allow the motion to amend because I believe that the Amended Complaint does not state a basis for claim of relief in that * * *.

"The Court is of the view that ordinary negligence is not the standard of liability in a media defamation case in this state. * * *" (Emphasis supplied.)

Defendants now argue, *inter alia,* that we should uphold the trial court's denial of the motion to amend because the ruling properly could have been based on the untimeliness of the motion and it would not have been an abuse of the judge's discretion to deny the motion on that ground. Defendants rely on *Baker v. Brookmead Dairy, Inc. et al, supra,* in which, according to defendants,

"* * * [the] defendants filed a motion for leave to amend their answer four days before trial. The court denied the motion, principally on the mistaken belief that the amended answer did not allege facts sufficient to constitute a defense. Nevertheless, the ruling was affirmed on appeal."

In *Baker,* however, the Supreme Court concluded that the denial of the motion to amend was *in fact* based on its untimeliness, as well as on the putative insufficiency of the tendered answer, and that the scope of appellate review was *therefore* confined to whether the trial judge abused his discretion by denying the motion on grounds of untimeliness. *See* 230 Or at 386-88. Here, we conclude that the sole basis for the denial of the motion was the trial court's conclusion that the amended complaint would not state a claim because a higher standard of liability than negligence had to be pleaded and proved.

It is true that, early in his discussion with counsel, the trial judge expressed the view that the motion to amend should be denied on the ground of untimeliness. However, it is clear that the court completely abandoned that basis for denying the motion during the course of the colloquy. As the quoted portion of the record shows, the court ultimately accepted the suggestion of *defendants'* attorney to decide the motion in such a way that the substantive issue would be preserved and plaintiffs "could go up on an appeal" and argue that negligence is the proper standard of liability. The fact that the later written order sets forth only the substantive reason for denying the motion demonstrates further that the court intended to base its ruling *wholly* on the ground that the negligence theory of the proffered amendment was insufficient to state a claim. *See State v. Swain/Goldsmith,* 267 Or

527, 517 P2d 684 (1974). Accordingly, whether the court erred by denying the motion to amend and whether the applicable standard of culpability is negligence or something higher are overlapping questions. We turn to the second.

■ Both parties contend that existing Oregon law requires the adoption of the respective standards of liability they advocate. Defendants argue that *Post v. Oregonian Publishing Co.*, 268 Or 214, 519 P2d 1258 (1974), is controlling. In that case, the plaintiff was wrongly identified as a drug smuggler in a news story published by the defendant. *Post* was decided three months before the United States Supreme Court decided *Gertz.* After noting that the defendant did not contend that the news story in question was not "about a subject of public or general interest," 268 Or at 220, and addressing certain other issues not relevant here, the court in *Post* held that the actual malice standard was applicable, as *Rosenbloom v. Metromedia, Inc., supra,* then required. In our view, *Post* was simply an application of then-controlling United States Supreme Court authority. It is not dispositive here independently of that authority, and *Rosenbloom* is of course no longer authoritative.

Plaintiffs argue that the negligence standard is compelled by existing law. They reason that the Oregon decisions permit libel to be proved without direct evidence of culpability; that, in the light of *Gertz,* the First Amendment requires only proof of negligence for a private individual to recover against a media defendant; that the Oregon Constitution does not require proof of greater culpability; and, therefore, that libel may be proved under these circumstances by establishing the common law elements plus negligence. However, whether the Oregon Constitution requires more than the minimum *Gertz* standard is an open question and one about which the parties and the amici disagree.[6]

---

[6] Although we have found the amicus briefs helpful, they will receive little separate discussion. The amicus Oregon Newspaper Publishers Association's argument is generally consistent with defendants' and urges us to apply the reasoning of *New York Times* and adopt either an actual malice standard or some other standard requiring proof of greater culpability than negligence. The amicus American Civil Liberties Union (ACLU) argues that we should construe the Oregon Constitution "to create an absolute privilege for all speech on matters of public concern" and thereby abolish any right of action for defamations arising out of such speech or, alternatively, "to require *all* plaintiffs * * * to prove that the defendant *knowingly* made a false statement of fact." (Emphasis ACLU's.) For reasons which follow from our opinion, we do not

The relevant Oregon constitutional provisions are Article I, sections 8 and 10. Section 8 provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right.—"

Section 10 provides:

"No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation.—"

Plaintiffs contend that those provisions, with the guarantee in one of a remedy for injury to reputation and the caveat in the other that everyone is responsible for abuse of communicative rights, afford more of a right of redress and less insulation for defamatory speech than does the First Amendment. Plaintiffs also note that, unlike the First Amendment, the Oregon speech provision "does not mention separately the 'freedom of the press' and so does not provide support for any distinction between private individuals and members of the media." *See Wheeler v. Green, supra,* 286 Or at 117-18. Defendants argue that Article I, section 8 has been construed to provide "a larger measure of protection to free expression" than the First Amendment, citing *Deras v. Myers,* 272 Or 47, 64, n 17, 535 P2d 541 (1975). Defendants also point to language of comparable import in *State v. Robertson,* 293 Or 402, 649 P2d 569 (1982) (relating to criminalization of certain speech by the coercion statute, ORS 163.275), and to the fact that the Oregon Supreme Court has interpreted the state constitution as precluding punitive damages for defamation and other speech-related torts. *Wheeler v. Green, supra; Hall v. The May Dept. Stores,* 292 Or 131, 637 P2d 126 (1981). Defendants conclude:

"Accordingly, where the First Amendment requires at least negligence in a defamation action against a media defendant, and where the Oregon Constitution has been held to provide a greater degree of protection than the First

accept the contention that the Oregon Constitution imposes greater restrictions on the right of private individuals to recover for injury to reputation than *New York Times* and later cases impose on public officials and public figures.

Amendment, the claim by Plaintiffs that the Oregon Constitution *requires* a negligence standard is utterly untenable. Instead, Article I, section 8 supports a higher standard than the minimum standard of negligence required by *Gertz.*" (Emphasis defendants.)

*Deras v. Myers, supra,* and *State v. Robertson, supra,* dealt with the constitutionality of statutes *prohibiting or criminalizing* communicative activity. In *Robertson,* the court differentiated between the prohibition of speech and the provision of a remedy for injuries caused by speech. It noted:

"As to providing a remedy for harm done by the impact of words as such, article I, section 8 does not immunize a speaker or writer against civil liability to another person 'by due course of law for injury done him in his person, property, or reputation,' as provided in article I, section 10, when the injurious words qualify as an 'abuse' of freedom of expression for which one can be held 'responsible' within the meaning of section 8. *See Hall v. May Dept. Stores Co.,* 292 Or 131, 637 P2d 126 (1981) (tortious infliction of emotional distress by verbal intimidation and threats), *Wheeler v. Green, supra,* n. 9 (defamation), *Turman v. Central Billing Bureau, Inc.,* 279 Or 443, 568 P2d 1382 (1977) (abusive debt collection methods)." 293 Or at 433, n 29.

*Deras* and *Robertson* do not assist defendants.

Neither does *Wheeler v. Green, supra,* or *Hall v. The May Dept. Stores, supra.* In *Wheeler,* the court held that Article I, section 10 does not require the availability of punitive damages in defamation cases, and that their recoverability would violate Article I, section 8 because they

* * * can easily inhibit the exercise of freedom of constitutionally protected expression, as well as its abuse. * * *" 286 Or at 119.

However, *Wheeler* also holds that the remedy of *compensatory* damages for injury to reputation is not proscribed by Article I, section 8 and is protected by Article I, section 10. 286 Or at 118. The court later explained in *May:*

"* * * The principle of the holding [in *Wheeler*], as stated above, was that punitive damages by definition go beyond whatever financial recompense is proper to compensate a plaintiff for the injury suffered by the plaintiff personally. Where such damages beyond any actual injury are allowable, the plaintiff collects them as a form of public punishment, not

by virtue of a personal entitlement to compensation. When the cause of defendant's liability is his 'abuse' of speech and expression, as in the case of defamation, *Wheeler v. Green* holds that the 'responsibility for the abuse' is confined to civil liability for compensation only. \* \* \*" 292 Or at 146.

In *Davidson v. Rogers,* 281 Or 219, 574 P2d 624 (1978), the court held that the retraction statute, ORS 30.160,[7] does not violate Article I, section 10. *See also Holden v. Pioneer Broadcasting Co. et al,* 228 Or 405, 365 P2d 845 (1961). Speaking for a plurality of the court in *Davidson,* Judge Holman stated:

"\* \* \* The language of the constitution does not specify that the remedy need be the same as was available at common law at the time of the adoption of the constitution; and the statute, while restricting the remedy, does not abolish the cause of action. Even though a retraction is not requested, the right of action still exists for an intentional defamation and, in any event, for recovery of specific demonstrable economic loss. Such a limitation is not violative of Art. I, § 10, for the reason that it does not wholly deny the injured party a remedy for the wrong suffered. \* \* \*

"In addition, the legislature has made available a retraction as a substitute for the remedy which the law would otherwise have provided. \* \* \*" 281 Or at 221-22.

Judge Lent, joined by one other judge, dissented in *Davidson.* Judge Linde, also joined by one other judge, concurred. He disagreed with the conclusion of the lead opinion that the retraction statute provided a "substitute legal remedy." 281 Or at 224. He stated, however:

"\* \* \* [T]he validity of ORS 30.160 does not rest on the contingency of a retraction. The statute does not withdraw

---

[7] ORS 30.160 provides:

"(1) In an action for damages on account of a defamatory statement published or broadcast in a newspaper, magazine, other printed periodical, or by radio, television or motion pictures, the plaintiff shall not recover general damages unless:

"(a) A correction or retraction is demanded but not published as provided in ORS 30.165; or

"(b) The plaintiff proves by a preponderance of the evidence that the defendant actually intended to defame the plaintiff.

"(2) Where the plaintiff is entitled to recover general damages, the publication of a correction or retraction may be considered in mitigation of damages."

the common-law action for defamation. It limits the financial scope of the remedy, at least for unintentional defamation, to a measure of damages that corresponds to injuries measurable in money.

"We need not pursue here the question how far the legislature must retain money damages as a constitutionally required remedy for noneconomic injuries when they existed at common law. Defamation is a special case, addressed by more than one provision of article I, Oregon's Bill of Rights. The focus of section 10 is on assuring a remedy to one whose reputation has been injured. At the same time, article I, section 8, forbids all laws 'restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever,' with the proviso that 'every person shall be responsible for the abuse of this right.' The two sections must be construed together. They yield a coherent view of freedom and responsibility. The responsibility pre-scribed in section 8 is responsibility to others for injuries done to them, such as the injury to reputation accorded constitu-tional stature in section 10. Laws limited to remedying such injuries alone are not laws restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever. Laws that in terms impose sanctions on speech or writing beyond the needs of remedying such injuries, whether statutory or common law, are restraints and restrictions forbidden by section 8. *See Deras v. Myers,* 272 Or 47, 535 P2d 541 (1975). Given the interrelation of our two explicit sections on freedom of speech and press and the right to a remedy for injury to reputation, a statute that matches financial compensation for unintentional defamation to demonstrable injuries measurable in money arguably exhausts the scope of that remedy under article I, section 8. In any event, it satisfies article I, section 10." 281 Or at 224-25.

*See also Gertz v. Robert Welch, Inc., supra,* 418 US at 348-50 (holding that, under the First Amendment, where there is no proof of actual malice, damages are limited to "actual injury," which excludes punitive damages but "is not limited to out-of-pocket loss").

*Wheeler* and *Davidson* relate specifically to kinds of damages in defamation cases which, respectively, cannot constitutionally be imposed and may constitutionally be lim-ited. However, the opinions in those cases illustrate generally the tension between the two Oregon constitutional provisions

and the balancing efforts the Oregon Supreme Court has undertaken in applying the provisions to defamation actions.

No previous Oregon appellate decision deals specifically with whether Article I, section 8 requires that a particular level of culpability be shown in libel cases, or whether Article I, section 10 precludes such a requirement. We agree with plaintiffs that the language of the two sections does not support defendants' view that the Oregon Constitution requires a showing of greater culpability against a media defamation defendant than does the First Amendment. Article I, section 8 expressly provides that every person is responsible for abuses of communicative rights; the First Amendment does not. Article I, section 10 expressly provides for a "remedy by due course of law for injury done * * * [to] reputation"; the United States Constitution does not do so — at least expressly. Unlike the First Amendment, Article I, section 8 provides no basis for distinguishing between the communicative rights of the media and those of everyone else; it contains no "freedom of the press" language. *Wheeler v. Green, supra,* 286 Or at 117-18.[8]

We find no basis for interpreting the language of Article I, sections 8 and 10, as embodying a general requirement that a plaintiff can recover for injury to reputation only if he proves culpability greater than negligence on the defendant's part. We also find no basis in their language for concluding that the Oregon provisions are more restrictive than the First Amendment of recovery by private individuals for defamation by the media. As illustrated above, the language of Article I, sections 8 and 10 supports the opposite conclusion.

The parties make policy arguments in addition to their arguments based on constitutional language and case authority. Defendants' arguments are to the basic effect that a standard of culpability as low as negligence will have a "chilling effect" on the press, will lead to self-censorship and

---

[8] The retraction *statute* considered in *Davidson v. Rogers, supra,* distinguishes between media and nonmedia defendants. We are aware of no challenge that has been made to that statute on the ground that it therefore violates the Fourteenth Amendment Equal Protection Clause or Article I, §§ 8 or 20 of the Oregon Constitution.

will thereby deprive the public of its right to receive information. In essence, those arguments are the same ones the Supreme Court considered in its First Amendment decisions culminating in *Gertz*. For the reasons earlier stated, we do not interpret the language of Article I, section 8 to require more insulation of the media from liability for defamation than the First Amendment does. We also conclude that a higher standard of media liability than the First Amendment requires is unnecessary to give effect to the purposes of Article I, section 8 and that it would unduly restrict the right assured by Article I, section 10.

It is true that negligence is the minimum level of culpability which *Gertz* allows the states to establish as a basis for liability in defamation actions by private individuals against media defendants. It does not follow that that minimum level is not adequately protective of the media. Indeed, the task that the Court set for itself in *Gertz* was to find the appropriate accommodation between the "state interest in compensating injury to the reputation of private individuals," 418 US at 343, on the one hand, and protection of the functions and constitutional freedoms of the media, on the other. The accommodation at which the Court arrived provides the media with greater constitutional insulation from recovery by defamed *private individuals* than it previously enjoyed under any previous opinion of the Supreme Court, except the plurality opinion in *Rosenbloom,* which was rejected in *Gertz* because it unduly restricted the ability of such individuals to recover damages for injury to reputation. The standard mandated by *Gertz* is not "minimal" in the sense that it is insufficient or marginally sufficient to protect the media; it is "minimal" only in the sense that the states are left free, as a matter of federalism, to devise standards which differ from the requirements of the United States Constitution so long as their standards satisfy those requirements.[9]

Defendants offer no empirical data and no convincing theoretical basis for concluding that a negligence standard in defamation actions by private individuals will impair the liberties or hamper the functions of the media. That standard provides a significant additional component of proof to what a

---

[9] Since *Gertz* was decided, a substantial preponderance of state and federal courts applying state law have adopted the negligence standard.

plaintiff was required to establish against any libel defendant at common law and to what a private plaintiff must only prove still to recover against a nonmedia defendant. *See Wheeler v. Green, supra,* 286 Or at 107-111.[10]

Moreover, the negligence standard is not the only protection available to media defamation defendants in Oregon. As noted earlier, *see* n 3, *supra,* punitive damages for libel are proscribed by Article I, section 8, even if the defendant acts with actual malice. In addition, media defendants are insulated by the retraction statute. Under ORS 30.160, *see* n 7, *supra,* a publisher or broadcaster of an unintentional defamation is subject only to special damages unless a retraction is demanded and is not published or broadcast at the end of a two-week investigatory period following demand. *See* ORS 30.165(2). Thus, in a very real sense, the negligence standard leaves a media defendant immune from general damages unless it is negligent twice — first, in making a defamatory false statement and, second, in failing to retract the statement after a demand and investigation.

In sum, we do not agree that the negligence standard required by *Gertz* provides inadequate protection for the media in its coverage of private individuals, and we therefore do not think that a higher standard should have to be met by those individuals to vindicate their right under Article I, section 10 to a remedy for injury to reputation. Because we conclude that no higher standard is mandated by the language or policy of the relevant Oregon constitutional provisions, the negligence standard minimally required by the First Amendment is applicable.[11] We hold that, in a libel action against a media defendant, a plaintiff who is a private individual must prove the elements of libel under the Oregon common law rule

---

[10] However, as noted in *Wheeler,* "all defendants, not only those associated with the media, continue to be protected by the *New York Times* rule in cases involving comment upon *public officials* and *public figures.*" 286 Or at 110. (Emphasis supplied.)

[11] It is unnecessary to decide in this case whether Article I, sections 8 and 10, require at least proof of negligence, independently of the First Amendment requirement. That question may arise in subsequent defamation cases involving private individual plaintiffs and nonmedia defendants. *See* Comment, "Defamation and State Constitutions: The Search for a State Law Based Standard After *Gertz,*" 19 Will L Rev 665 (1983).

and, in addition, must prove that the defendant acted negligently in the measures taken to determine whether the defamatory statement was true or false.[12]

The remaining question is whether the evidence before the court in the summary judgment proceeding created a genuine issue of material fact as to whether defendants were negligent in failing to ascertain whether the defamatory statements were true or false. Defendants' only basis for arguing that there was not sufficient evidence is that they offered expert evidence to define and show that they met the standard of care of reasonable members of their profession in their community; that "[p]laintiffs submitted no counter-affidavit or other [expert] evidence either establishing the applicable standard of care journalists observe in similar situations or demonstrating that Defendants breached that specific standard"; that expert evidence is "necessary to prove or disprove charges of negligence against professional persons"; and that "[a]lthough Oregon has not yet expressly ruled that journalists are professionals for purposes of determining the applicable standard of care in negligence actions, many courts since *Gertz,* as well as the Restatement (Second) of Torts, have adopted this rule." Plaintiffs argue that

> "[e]xpert testimony is not required to establish negligence in this case because whether or not the defendants took reasonable steps to ascertain the truth is not a matter beyond the knowledge of the average juror."

We agree generally with defendants that, when negligence is alleged against a media defendant, there should be a professional standard of care. Comment *g* to Restatement (Second) Torts, § 580B (1977), states in part:

> "The defendant, if a professional disseminator of news, such as a newspaper, a magazine or a broadcasting station, or an employee, such as a reporter, is held to the skill and experience normally possessed by members of that profession. (See § 299A). Customs and practices within the profession are relevant in applying the negligence standard, which is, to a

---

[12] This opinion addresses only the requirements that plaintiffs must satisfy to make out a prima facie case. Nothing we have said should be understood as a comment on other matters, such as the defenses available to media or other defendants in a libel action. Here, for example, defendants have alleged affirmatively that their statements are true.

substantial degree, set by the profession itself, though a custom is not controlling. (See § 295A). * * *"

We conclude that the proper standard of care is that of a reasonably prudent, careful and skillful practitioner of the particular journalistic or other communicative school of which the defendant is a member. *See Creasey v. Hogan,* 292 Or 154, 163, 637 P2d 114 (1981).

■    We do *not* adopt a "locality" rule as part of the standard of care, *i.e.,* a rule *requiring* proof that the defendant's conduct is deficient compared to that of practitioners in the defendant's community or similar communities. For purposes of proving negligence against media defendants, we conclude that evidence of practices in a particular community should be treated "as merely one factor to be taken into account in applying the general professional standard" and should not be an independent element or component of the standard. Prosser on Torts 164, § 32 (4th ed 1971); *see Cessnun v. Signer Motors, Inc.,* 64 Or App 129, 133, 666 P2d 1389 (1983), and authorities there cited.

■    We agree with the following statements in comments *g* and *h* to section 580B of the Restatement as *general* guidelines for the application of the standard of care we adopt:

"Evidence of custom within the profession of news dissemination would normally come from an expert who has been shown to be qualified on the subject. It may be testimony that the course of conduct followed by the defendant was or was not in accordance with recognized professional practices. * * *

"In determining whether the defendant acted as a reasonable, prudent [practitioner] under the circumstances in publishing the defamatory communication on the basis of his check or lack of check as to its accuracy and as to its defamatory character, there are factors to be taken into consideration. The thoroughness of the check that a reasonable person would make before he published the statement may vary with the play of these factors. The standard of care does not change, but its application may vary with the circumstances. One factor is the time element. Was the communication a matter of topical news requiring prompt publication to be useful, or was it one in which time and opportunity were freely available to investigate? In the latter

situation, due care may require a more thorough investigation.
* * *"

Whether expert testimony is relevant or necessary in a given situation must be determined in the light of relevant Oregon decisions, *e.g.*, *Hall v. State*, 290 Or 19, 619 P2d 256 (1980); *Getchell v. Mansfield*, 260 Or 174, 489 P2d 953 (1971), as well as the standards of the Restatement.

▇    Assuming that, to establish liability in this case, plaintiffs must adduce expert evidence of defendants' breach of the applicable standard of care, it does not follow that defendants were entitled to summary judgment because plaintiffs did not produce evidence of that kind in opposing defendants' motion. The party moving for summary judgment has the burden of showing the absence of genuine material factual questions "even as to those issues upon which the opposing party would have the trial burden." *Seeborg v. General Motors Corporation*, 284 Or 695, 699, 588 P2d 1100 (1978). The court stated in *W. R. Chamberlin & Co. v. Northwestern Agencies*, 289 Or 201, 611 P2d 652 (1980):

> "The question to be decided is whether the jury should have been bound to accept the expert's uncontradicted opinion. We hold that the jury may reject this conclusion because the weight of the opinion of an expert witness is a matter particularly within the province of the jury." 289 Or at 207.

It follows that plaintiffs were not required to controvert defendants' expert evidence to resist the motion for summary judgment. The correctness of that uncontradicted evidence *is itself* a genuine issue of material fact, and the evidence therefore did not satisfy defendants' burden of establishing as a matter of law that they were not negligent. *See Felske v. Worland*, 63 Or App 442, 445, n 2, 664 P2d 427 (1983).[13]

    We hold that the trial court erred by granting summary judgment for defendants and by denying plaintiffs' motion to amend their complaint.

Reversed and remanded.

---

[13] Given the basis for our holding that defendants were not entitled to summary judgment, we need not decide whether any evidentiary requirement this opinion establishes could properly be applied "retroactively" to the summary judgment proceeding we review. *See Dean v. Exotic Veneers, Inc.*, 271 Or 188, 531 P2d 266 (1975).