**Edward L. CAREY, Plaintiff,**

v.

**Britt HUME et al., Defendants.**

**Civ. A. No. 3644–70.**

United States District Court,
District of Columbia.

March 21, 1975.

See also, 160 U.S.App.D.C. 365, 492 F.2d 631.

J. Gordon Forester, Jr., Washington, D.C., for plaintiff.

Isaac N. Groner, Washington, D.C., for defendant B. Hume.

Warren Woods, Washington, D.C., for defendant J. Anderson.

Roger A. Clark, Washington, D.C., for defendant Washington Post.

# 1028

## MEMORANDUM AND ORDER

CORCORAN, District Judge.

In this diversity action plaintiff Edward L. Carey sues Britt Hume, Jack Anderson and the Washington Post (the Post) for an alleged libel in an item composed by Britt Hume for the "Washington Merry-Go-Round." The item was published under the by-line of defendant Jack Anderson in the Post and numerous other newspapers throughout the United States.

The item in its totality reads as follows:

### Washington Expose

Records Stolen?—With the government digging deeper into the financial affairs of the United Mine Workers, the union's President Tony Boyle and General Counsel Ed Carey spent hours recently going through the records. Later, they were seen removing boxfuls of documents from Boyle's office. Not long afterward, Carey made an official complaint to Washington Police that burglars had struck at union headquarters. Among the goods reported stolen: a boxful of "miscellaneous items." The Justice Department is investigating.

Before the Court are motions for summary judgment filed by each of the above-named defendants and the opposition thereto of the plaintiff. *Fed.R. Civ.P.* 56.

## I

■ At the time of the publication Carey was general counsel to the United Mine Workers of America (UMWA) and W. A. "Tony" Boyle was its President. It is admitted for purposes of this case that Carey, by reason of his position in UMWA and by reason of other extensive public activity on his part, is a "public figure" within the meaning of New York Times Company v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).[1] That case established the principle that for a civil libel plaintiff who is a "public figure" to recover in a libel suit he must show that the statement at issue was published with "actual malice," *i.e.*, "with knowledge that a (defamatory statement) was false or with reckless disregard of whether it was false or not." New York Times v. Sullivan, *supra*, 376 U.S. at 280, 84 S.Ct. at 726. *See also* Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L. Ed.2d 1094 (1967).

■ In this particular case, the defendants, relying upon depositions and affidavits, assert there is no genuine dispute as to any material fact and thus as a matter of law they are entitled to summary judgment under *New York Times* and its progeny.[2]

In particular Hume asserts that he received the published information from a reliable source, that he took all steps reasonable under the circumstances to check the accuracy of that information and that the publication accurately reflects his source's report.

Anderson asserts that when hired by him, Hume had established a reputation as a reliable reporter and that Anderson had no reason to go behind his story and check it for accuracy of detail.

The Washington Post, in turn, asserts that its examination of the story revealed no reason to doubt its accuracy, especially since submitted by Hume and Anderson.

---

1. The applicability of *New York Times* to Carey as a "public figure" has been previously asserted by the Court of Appeals in Carey v. Hume, 160 U.S.App.D.C. 365, 492 F.2d 631 (1974).

2. In appropriate situations there is no question but that a libel suit of this character may be disposed of by summary judgment. *See, e. g.*, Gospel Spreading Church v. Johnson Publishing Co., 147 U.S.App.D.C. 207, 454 F.2d 1050 (1971); Thompson v. Evening Star Newspaper Co., 129 U.S.App.D.C. 299, 394 F.2d 774, *cert. denied*, 393 U.S. 884, 89 S.Ct. 194, 21 L.Ed.2d 160 (1968); Washington Post Co. v. Keogh, 125 U.S. App.D.C. 32, 365 F.2d 965 (1966), *cert. denied*, 385 U.S. 1011, 87 S.Ct. 708, 17 L.Ed.2d 548 (1967).

Under the circumstances all defendants assert that actual malice does not and cannot exist in that there is no evidence that the report was published with knowledge of its falsity or in reckless disregard of the truth.

## II

■ Factually, it is established by the record that Hume's "source" is a Mrs. Combs. In the course of a dinner party, she heard from an alleged eye-witness that Carey moved files from "Tony" Boyle's office on the 2nd floor of the UMWA headquarters to Carey's office on the 5th floor of the headquarters of the UMWA and passed the information to Hume.

In her deposition she stated that she told Hume

(t)hat there was a burglary over at UMW Headquarters, items taken, keys, television and miscellaneous items, probably the boxes of records that Mr. Boyle and Mr. Carey had been carrying back and forth from Mr. Boyle's office to Mr. Carey's office and going through them.[3]

Hume made notes of his conversation with Mrs. Combs. His notes state that the records were carried "from Boyle's ofc. on 2d floor to Carey's office."[4] Hume has conceded that Mrs. Combs told him that the records were in fact carried "out of Boyle's office on the second floor . . . to Carey's office . . . ."[5]

Although Hume was informed of the identity of the alleged eye-witness to the event, at the request of Mrs. Combs he did not check his story with that eye-witness.[6]

It is further established by the record that Carey filed a burglary report with the District of Columbia Metropolitan Police Department.[7]

## III

Considering that Carey was general counsel to the UMWA, a report that he had moved files from the President's office to his own office would hardly seem newsworthy. Nor would it appear particularly newsworthy that at sometime thereafter Carey had reported a burglary at the headquarters of the UMWA.

However, when Hume reported under the heading "Washington Expose" and following a preamble "Stolen records?", that in the face of a government investigation, Carey and Boyle were seen removing "boxfuls of documents" from Boyle's office and that not long afterward, Carey made an official complaint to the District Police that "burglars had struck at union headquarters"—omitting any reference to the fact that such "boxfuls of documents" were only moved from Boyle's office to Carey's office— the article becomes subject to the interpretation that Carey was obstructing justice by surreptitiously removing files or documents from the UMWA headquarters building and then accounting for their removal by reporting a false burglary. Under such an interpretation a jury could find the article libelous.

## IV

### A. *The Washington Post*

■ As to the defendant Post, the Court is mindful that the Supreme Court has said in order for there to be a free and vigorous press it must have "breathing space" between the First Amendment, on the one hand, and libel actions, on the other hand. N.A.A.C.P. v. Button, 371 U.S. 415, 433, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). *See also* Curtis Publishing Co. v. Butts, *supra*, 388 U.S. at 152, 87 S.Ct. 1975 (Harlan, J.). Thus, under the *New York Times* standard, a public person "may recover

---

3. Combs Deposition at 61, 68.

4. Plaintiff's Opposition to Motions for Summary Judgment by Defendants Hume and Anderson, Exhibit 4.

5. Hume Deposition of May 31, 1974, at 84.

6. Hume Affidavit ¶4, at 2.

7. Carey Deposition, at 228–29.

for injury to reputation only on clear and convincing proof that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth." Gertz v. Welch, 418 U.S. 323, 342, 94 S.Ct. 2997, 3008, 41 L.Ed.2d 789 (1974). Accordingly for plaintiff Carey to recover, he must show that the Post published defamatory falsehood with actual malice,[8] and "there must be sufficient evidence to permit the conclusion that the defendant (Post) in fact entertained serious doubts as to the truth of [its] publication." St. Amant v. Thompson, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed. 262 (1968). This Carey has failed to do.[9] Further, the assertion by Carey that the Post had an independent duty to verify the facts contained in the syndicated column, "Washington-Merry-Go-Round," was rejected by the Court of Appeals in Washington Post Co. v. Keogh, supra, 125 U.S.App.D.C. at 39–40, 365 F.2d at 972–73.[10]

The motion of the Post for summary judgment must, accordingly, be granted.

### B. *Hume and Anderson*

However, the protection accorded Hume and Anderson is not co-extensive with that of the Post, and on the record developed to date, the Court finds that defendants Hume and Anderson are not entitled to summary judgment.

■ There is a genuine, controverted issue of material fact as to whether Hume and Anderson misrepresented or distorted the report of their source.[11] The fact that Hume denies any misrepresentation[12] does not, of course, make it so.

Similarly, there are disputed material facts as to whether Hume's source was reliable, and as to whether Hume and Anderson's reliance on that source was reckless.[13] For example, in a subsequent article published on December 15, 1970, defendant Anderson wrote: "Our report was based upon information supplied by eyewitnesses and we will not retract."[14] It is of course conceded that Hume's source was not, in fact, an eyewitness.

■ In this posture, then, summary judgment is inappropriate.[15] See, e. g., Associated Electric Cooperative, Inc. v. Morton, 165 U.S.App.D.C. 344, 507 F.2d 1167, 1178 n.20 (1974). The plaintiff is entitled to go to the jury on the issue of "actual malice" because he has made some "showing . . . of facts from which malice may be inferred." Thompson v. Evening Star Newspaper Co., supra, 129 U.S.App.D.C. at 301, 394 F.2d at 776. Cf. Cantrell v. Forest City Pub-

---

8. "(T)he defamed . . . public figure must prove not only that the publication is false but that it was knowingly so or was circulated with reckless disregard for its truth or falsity." Cox Broadcasting Corp. v. Cohn, No. 73–938 (1975), —— U.S. ——, at ——, 95 S.Ct. 1029, 43 L.Ed.2d 328.

9. The affidavits submitted by the Post in support of its motion for summary judgment have not been effectively rebutted by plaintiff.

10. Plaintiff's claim that the recent decision of the Supreme Court in Gertz v. Welch, *supra*, requires a different result on the verification issue than that mandated by *Keogh* is without merit. *Keogh*, of course, was decided on the basis of the *New York Times* standard. In *Gertz*, however, the Supreme Court specifically declined to extend the *New York Times* test to private individuals, such as petitioner Gertz, and allowed such individuals to recover only actual damages when liability is established under a standard less demanding than that imposed by *New York Times*. In the case at bar, plaintiff Carey is a public person and thus bound by the strictures of *New York Times*.

11. *See* Carey v. Hume, *supra*, 160 U.S.App.D.C. at 371, 492 F.2d at 637.

12. Hume Affidavit in Support of Motion for Summary Judgment, ¶ 5, at 2.

13. *See* note 11, *supra*.

14. *See* Anderson Deposition, at 76–80.

15. Moreover, the contention of defendants Hume and Anderson that they, as investigative reporters, are entitled to a special protection within the penumbra of the First Amendment and the *New York Times* standard has no apparent vitality following the decision of the Court of Appeals in Davis v. Schuchat, 510 F.2d 731 (D.C.Cir. 1975).

lishing Co., 419 U.S. 245, 95 S.Ct. 465, 42 L.Ed.2d 419 (1974), a "false light" invasion of privacy case.

## V

Accordingly, it is by the Court this 21st day of March, 1975,

Ordered, adjudged and decreed that the motion of defendant Washington Post for summary judgment be, and the same is hereby, granted; and it is further

Ordered, adjudged and decreed that the motions of defendants Hume and Anderson for summary judgment be, and the same are hereby, denied.