Argued November 4, affirmed as modified December 23, 1976

JONES, *Appellant,*
*v.*
JONES et al, *Respondents.*
(Tr Ct 73-1408, S Ct 24445)
557 P2d 239

*Edward N. Fadeley,* Eugene, argued the cause and filed a brief for appellant.

*William F. Frye,* Eugene, argued the cause and filed a brief for respondents.

Before Denecke, Chief Justice, and Holman, Bryson, Lent and Bohannon, Justices.

LENT, J. (Pro Tempore).

**LENT, J.** (Pro Tempore).

This is a suit in equity in which plaintiff seeks to set aside under ORS 16.460 (1) a decree dissolving the marriage of plaintiff and Joseph Cloyd Jones on the alleged grounds that plaintiff had been prevented from defending the dissolution proceeding as a result of duress. Plaintiff appeals from a decree denying her relief, dismissing her suit and entering judgment for all defendants for costs and disbursements. Since Joseph had died prior to the commencement of the suit, a favorable result for plaintiff cannot accomplish the physical restoration of the marriage, but it would affect the property rights of plaintiff and the various defendants and is, therefore, not moot.

Plaintiff and Joseph were intermarried first in Kansas in 1943 and later divorced. They lived apart only a short time and were married in Nevada in 1950. They had lived in Oregon for several years before Joseph filed suit in Lane County on February 18, 1972, for dissolution of the marriage and a division of their property. There were no children of the marriage. A default decree was made and entered on May 22, 1972. Joseph died September 28, 1972. The suit at bar was filed against the heirs of Joseph and Joseph's brother, Edwin L. Jones, as personal representative of the estate of Joseph.

Plaintiff's various complaints give us some trouble in ascertaining exactly what it is upon which plaintiff seeks relief, but we shall adopt her own summary of the third amended complaint as found in her abstract of record describing the three causes as follows:

"1) The decree of dissolution was obtained by duress and hence constituted a fraud upon the court;
"2) There existed a common law marriage between Libby and Joseph; and
"3) There were valuable services rendered pursuant to agreement by Libby for Joseph in the amount of the assets of the estate."

The court overruled the demurrer to the first cause of

[ 1127 ]

suit and sustained the demurrers to the second and third causes.

Eventually plaintiff filed a fifth amended complaint containing two causes and tried the case in the lower court on the first cause, which is substantially the same as the first cause in her third amended complaint as above set forth.

We try this suit anew on the record. ORS 19.125 (3). The evidence was all by way of oral testimony, and the trial judge, therefore, was in a unique position to weigh the evidence based upon his opportunity to judge at first hand the demeanor of the witnesses and to reach conclusions as to their credibility and the reliability of their testimony. In such cases, although it is our duty to try the case anew on the record, we do, and should, give great weight to the findings of the trial judge.

Plaintiff's first assignment of error is that the trial judge erred in finding as fact that the plaintiff's "will was not completely overcome" by the alleged duress.

Upon the trial plaintiff asserted that she was subject both to duress and undue influence, as though the terms were interchangeable. They are probably not, but we need not explore the difference, for in this court plaintiff asserts duress, without mention of undue influence, as the cause of her failure to defend.

Against what definition of "duress" do we assess plaintiff's evidence to determine whether she has established proof of her claim? From the cases and other authorities we can pick and choose among various statements purporting to define the term. Many of these definitions are obviously worded to deal with the particular factual situation there confronting the court. To avoid that kind of definition we shall simply say that in general any wrongful act or threat thereof which actually compels the victim, against his will, either to act or to forbear from acting constitutes duress.

There was no timely request for special findings under ORS 17.431; however, the trial court issued a memorandum opinion making certain findings in the nature of special findings and a general finding in favor of defendants. The form of decree has elements typical both of a decree upon special findings and upon general findings.

The cause was tried on the oral testimony of plaintiff and witnesses called by plaintiff. Defendant called no witnesses. Plaintiff characterizes the evidence, therefore, as being "uncontradicted." With this characterization we cannot agree. Much of the evidence given by witnesses on direct examination was contradicted or weakened upon cross-examination. The direct examination evidence of plaintiff was weakened both on cross-examination and by her version of the facts given upon deposition prior to trial.

Among her witnesses, plaintiff called a psychologist, who examined the plaintiff approximately a year and a half after the dissolution proceedings and about six months after the filing of the case at bar. This witness expressed as her opinion that plaintiff was acting under duress at the time of the dissolution proceedings because she was (a) distinctly fearful of and traumatized by Joseph and, as far as he was concerned, was immobilized psychologically to a point of virtual incompetency; (b) had a fear and continuing concept of her husband as a violent man; and (c) had a strong feeling of dependency upon him. This witness opined that it would not be untypical of plaintiff as a "stressed hysteric" to behave in a fashion which could be interpreted as willing, when in fact she was responding to strong emotions such as fear, terror or distress.

It is obvious that the trial judge in making the findings hereinafter set out rejected the expert's opinion in whole or in great part. Perhaps he had in mind the rule set forth by this court concerning such evidence in *Wallace v. American Life Ins. Co.,* 111 Or

510, 225 P 192, 227 P 465 (1924); *Baber v. Caples,* 71 Or 212, 138 P 472, 1916C Ann Cas 1025 (1914); and *Wendl v. Fuerst,* 68 Or 283, 136 P 1 (1913). In those and other cases we have held that the testimony of experts is to be received and weighed with caution. In *Baber* we quoted with approval from I Taylor on Evidence § 58 (8th ed):

> " 'Perhaps the testimony which least deserves credit with a jury is that of *skilled witnesses.* These gentlemen are usually required to speak, not to facts, but to *opinions;* and, when this is the case, it is often quite surprising to see with what facility and to what an extent their views can be made to correspond with the wishes or the interests of the parties who call them. They do not, indeed, willfully misrepresent what they think; but their judgments become so warped by regarding the subject in one point of view that, even when conscientiously disposed, they are incapable of expressing a candid opinion.' " 71 Or at 221.

We have held that the rule of these cases should not be communicated to juries by instructions embodying the rule, not because the rule is erroneous, but because it invades the province of the jury as judges of the credibility of the witnesses. *See Kennedy v. Industrial Acc. Com.,* 218 Or 432, 345 P2d 801, 86 ALR2d 1032 (1959); and *Wilson v. State Ind. Acc. Comm.,* 189 Or 114, 219 P2d 138 (1950). That situation is not involved in a trial without jury. Here, the trial judge had the opportunity to weigh the opinion evidence of the expert against that of plaintiff's other witnesses, who had directly observed both plaintiff and Joseph during the period in question.

We have alluded to the discrepancies in plaintiff's own testimony. At times she urged that she was afraid of Joseph because of his manifestations of violence and threats, both to her and to her personal property, and was afraid to oppose his expressed desire for dissolution of the marriage. At other times she testified that she did not oppose him and defend the original suit because of her love for him and interest in his welfare.

At one point she even testified on cross-examination that everything she did was done voluntarily. There are many other examples of conduct of plaintiff, from some of which an inference of the presence of duress might be drawn and from others the absence thereof.

■ A decree obtained by duress is obtained through fraud practiced upon the court, and the party who seeks to set it aside under ORS 16.460 (1) must produce clear and convincing evidence. This is especially so where the party who allegedly practiced the fraud is dead. *See Sturm v. Cooper,* 145 Or 583, 28 P2d 231 (1934). It is uncontradicted that during the relevant period plaintiff was employed outside the home full time, that she primarily managed the business affairs of the marital community, that within a day or two after Joseph filed his suit she moved to her own apartment, and that although about three or four weeks later she returned to live with Joseph during the pendency of his suit, she maintained her own apartment, continued to work, and came and went from the family trailer home at will.

It has been held that as a matter of law there can be no duress where the party claiming it is free to come and go and to consult counsel. *Palatucci v. Woodland,* 166 Pa Super 315, 70 A2d 674 (1950). Even if we refrain from adopting such as a rule of law, we find that the factual situation thus described strongly suggests an absence of duress. Plaintiff could have consulted counsel of her own choosing and raised each and every claim of duress here made and litigated not only Joseph's demand for dissolution, but the division of their assets should the court have found dissolution to be justified on the facts and the law. Instead plaintiff refrained from consulting counsel of her choice and entered into a property settlement agreement. Even though she claims that the agreement is the result of duress, by no stretch of the imagination can it be considered to be unconscionable on its face.

[ 1131 ]

In his memorandum opinion the trial judge made the following findings of fact:

"(1) The deceased had been violent on occasion throughout the marriage;

"(2) The plaintiff had divorced the deceased previously and they remarried in the early 50's;

"(3) Prior to taking the decree, the deceased had acted violently and in a threatening manner towards the plaintiff by (a) throwing coffee at the plaintiff when asking for a divorce; (b) threatening to kill himself or both of them if she did not agree to his requested division of the property; (c) threatening to break plaintiff's dishes if she did not pay the federal taxes.

"The above findings must be weighed against the following findings of the Court:

"(1) The plaintiff continued to live with the deceased after he filed for dissolution but moved into separate apartment later at his request;

"(2) The plaintiff continued to telephone the deceased daily and to prepare dinner for him each day during the separation;

"(3) The plaintiff voluntarily returned to live with the deceased at his request prior to his taking the decree. This was without any threats by the deceased;

"(4) The plaintiff was away from the deceased at her employment daily even while living with him;

"(5) The plaintiff had previous experience with divorce and consulting with an attorney concerning legal matters;

"(6) The plaintiff testified that she loved the deceased and would not fight him."

Upon this *de novo* review we find that the evidence preponderates in favor of these findings, which are adverse to plaintiff's claim of duress. Certainly the evidence falls far short of establishing that the truth of the facts asserted by plaintiff as the basis for recovery is "highly probable," i.e., that the evidence is clear and convincing in her favor. *Cook v. Michael,* 214 Or 513, 527, 330 P2d 1926 (1958).

The trial judge concluded "that the plaintiff's will was not so completely overcome by fear of the deceased

that she was prevented by such fear from taking appropriate steps to protect her own rights." We agree and conclude that plaintiff has failed to establish by clear and convincing evidence that any wrongful act or threat thereof by Joseph actually compelled her, against her will, to forbear from contesting his suit for dissolution.

Plaintiff makes other contentions of error which are unnecessary for us to consider in view of our conclusion that the decree was not secured by duress.

Plaintiff's third assignment of error complains that the trial judge erred in finding for defendants Edna Ruth Jones (Joseph's mother) and for Dean F. Jones (Joseph's brother) and in refusing to grant plaintiff's motion for a default decree against these two defendants. Plaintiff contends that Edna is heir apparent to one-half of Joseph's estate and Dean to one-eighth, and that plaintiff is entitled to a default decree for those shares for "default" of these two defendants. She asserts that they did not join in the demurrers to the second and third causes of her third amended complaint; therefore, they are not entitled to the benefit of the order sustaining those demurrers.

*State ex rel Everett v. Sanders,* 274 Or 75, 544 P2d 1043 (1976), holds that a decree may not be taken against a defaulting defendant where it has been adjudicated that the complaint does not state facts sufficient to constitute a cause of suit if the defaulting defendant occupies exactly the same legal position as the defendant in whose favor the demurrer was sustained. The rationale of *Everett* is applicable as to all defendants who may have been in default in this case. Plaintiff makes no claim against any such defendants by reason of any act or omission upon their part but joins them as defendants only because they are heirs. It is of Joseph's acts and omissions plaintiff complains and if such acts and omissions were insufficient to justify relief to plaintiff, there is no basis for a decree against anyone.

Anyone who was in default by nonappearance is not entitled to a decree and judgment for costs and disbursements against plaintiff. The portion of the decree in favor of Dean F. Jones for costs and disbursements must be set aside because we find that he alone was the only person actually in default. The trial court file shows that Edna had actually made a general appearance in the case by stipulation through Frye and had actually joined in the demurrers. She is entitled to her judgment for costs and disbursements.

The decree of the court below is modified to allow costs and disbursements in favor of all defendants except Dean F. Jones.

Affirmed as modified.