Argued and submitted May 2, 1984, affirmed and remanded to circuit court January 8, rehearing denied by opinion March 19, 1985
See 298 Or 819, 696 P2d 1095 (1985)

BANK OF OREGON et al,
*Respondents on Review,*

*v.*

INDEPENDENT NEWS, INC. et al,
*Petitioners on Review.*

(A7908-03679; CA A24067; SC S30174)

693 P2d 35

Bruce E. Smith, Eugene, argued the cause and filed the brief for petitioners on review. With him on the brief were Cass, Scott, Woods & Smith and Roger M. Saydack, Eugene.

Bernard Jolles, Portland, argued the cause and filed the briefs for respondents on review. With him on the brief was Jolles, Sokol & Bernstein, P.C., Portland.

Charles F. Hinkle, Portland, filed an Amicus Curiae brief on behalf of ACLU of Oregon, Inc.

Ernest Bonyhadi and Charles F. Hinkle, Portland, filed an Amicus Curiae brief on behalf of Statesman-Journal Co. for Stoel, Rives, Boley, Fraser & Wyse and Clark, Marsh Lindauer, McClinton & Vollmar.

Charles F. Hinkle, Portland, filed an Amicus Curiae brief for Dow Jones & Company, Inc. With him on the brief were Ernest Bonyhadi and Stoel, Rives, Boley, Fraser & Wyse, Portland; Robert D. Sack, Robert P. LoBue and Patterson, Belknap, Webb & Tyler, New York, New York.

Jack L. Orchard, Portland, filed an Amicus Curiae brief for Oregon Newspaper Publishers' Association. With him on the brief was Ball, Janik & Novack, Portland.

Before Peterson, C. J., Lent, Campbell, Roberts, Carson and Jones, Justices.

CAMPBELL, J.

## CAMPBELL, J.

The issue on review is the standard of culpability that these plaintiffs must prove in order for a court or jury to hold media defendants liable for defamation.

Plaintiffs Bank of Oregon and Wadsworth, its president, brought this libel action against defendants Independent News, Inc., publisher of the "Willamette Week," and Buel and Meeker, two reporters for the newspaper. Plaintiffs pleaded that defendants wrote and published an article which was false and defamatory with knowledge of its falsity or reckless disregard of its truth or falsity and with an actual intent to defame plaintiffs. Plaintiffs alleged damages totalling $7,400,000 as a result of the defamation. Plaintiffs requested defendants to publish a retraction of the defamatory statements in the article and defendants refused to do so.

The article was entitled "A Lot Off the Top" and dealt at some length with banking transactions involving plaintiffs and Richard Cross, the primary source of information for the article. The article as a whole indicated that plaintiffs had engaged in numerous wrongful acts to divert Cross' money and credit to another bank customer.

Plaintiffs filed a complaint on August 3, 1979. After extensive discovery, defendants moved for summary judgment on October 21, 1981. Plaintiffs moved to amend their complaint on January 29, 1982, to include an allegation that defendants had negligently published the article; that is, published it without due care to ascertain whether the article was true. The trial judge denied the motion to amend on the stated ground that negligence was not a proper standard in this case for proof of defendants' culpability in publishing the article.

The trial judge entered summary judgment for defendants, reading into the record his belief that the plaintiffs must prove gross negligence on the part of defendants to prevail, and that plaintiffs had not demonstrated sufficient facts to prove that defendants, judged by an objective standard, had engaged in reckless conduct.[1] The Court of Appeals

---

[1] The trial judge equated gross negligence with reckless conduct. We are not certain that the two are equivalent in a defamation case but do not need to decide this issue to resolve this case.

reversed and remanded the case. 65 Or App 29, 670 P2d 616 (1983). It held that the proper standard of liability was negligence (the care of a reasonably prudent, careful and skillful journalist) and that summary judgment for defendants was error.

Although the issue raised in this case will ultimately require analysis of the Oregon and United States Constitutions, we shall first examine the Oregon common law on libel. Once the standard of liability required under Oregon caselaw is determined, we will ascertain whether that standard is consistent with the Oregon Constitution. If so, we will decide whether that standard is consistent with the federal constitution as interpreted by the Supreme Court of the United States.

The action of defamation is brought by a person who has been libelled or slandered by the utterance of another. To be actionable, the utterance must defame the person bringing the action. Three categories of affirmative defenses are available: (1) the utterance was true; (2) the utterance was absolutely privileged; or (3) the occasion of the utterance was qualifiedly privileged. The latter defense, unlike the others, does not bar the action, but requires plaintiff to prove that the defendant acted with actual malice.

At Oregon common law, lack of culpability could establish a defense to a libel action in certain circumstances. Where the qualified privilege of "fair comment and criticism" was applicable, the defendants would not be liable if the publication was made in good faith and without malice. *Peck v. Coos Bay Times Pub. Co.*, 122 Or 408, 259 P 307 (1927). *Peck* stated that statements published in defendant's newspaper "concerning plaintiff's political activities and his alleged affiliation with the Ku Klux Klan came within the doctrine of qualified privilege * * *." 122 Or at 422. This holding was based primarily upon the fact that plaintiff had entered the political arena, though he was not a public official or candidate. This court stated that in such a situation defendants were not liable for statements that did not attack the character, morals, or lawfulness of plaintiff unless they published the statements with actual malice. 122 Or at 420-21. *Peck* also held that statements that plaintiff committed a criminal assault and that he was a "double-crosser" were not fair comment or criticism nor qualifiedly privileged and that,

therefore, truth of the statements was the only defense. 122 Or at 422. This was so even though the "double-crosser" reference was made concerning plaintiff's political activities. 122 Or at 419.

*Kilgore v. Koen,* 133 Or 1, 8, 288 P 192 (1930), stated that a qualified privilege existed for fair and impartial reports of judicial proceedings, regardless of the nature of the proceedings or whether they were recorded. The article in *Kilgore* as a whole was determined as a matter of law to be such a privileged report. Thus, the burden of proving actual malice rested upon plaintiff. 133 Or at 9.[2]

The facts in *Marr v. Putnam,* 196 Or 1, 246 P2d 509 (1952), are similar to the instant facts. An article suggesting that plaintiffs were "slickers" operating a "radio racket" was published by defendants. Although defendants maintained that the article merely commented on matters of public interest and was therefore qualifiedly privileged, this court held that the publication of assertions of misconduct, not acknowledged or proved to have occurred, is not privileged under Oregon law. 196 Or at 30-35. The article did not expressly allege the commission of a crime by the "slickers." Nevertheless, this court found that "[n]o matter how honest his motive" a journalist does not have a privilege to proclaim that an individual has committed a crime or to proclaim, based upon rumor, that an individual has frailties or a bad character. 196 Or at 34-35.

■ These three cases required proof of actual malice only where the defamatory statements are qualifiedly privileged. The qualified privileges discussed do not encompass the

---

[2] *Kilgore v. Koen,* 133 Or 1, 288 P 192 (1930), suffers from the confusion which confounded judges and commentators for decades. Two different types of "malice" were involved in many libel actions. One type was the actual malice referred to in the text above. The other type was a legal fiction arising from pleadings alleging malice, as was necessary in *criminal* libel, which over time became considered essential to the civil action. *Prince v. Brooklyn Daily Eagle,* 16 Misc 186, 187, 37 NYS 250, 251-52 (Sup Ct 1896). When this legal fiction became troublesome, as when there was no conceivable malice on the part of the defendant, another legal fiction rode to its rescue. That legal fiction was that malice would be presumed or implied in most libel cases, *i.e.,* those in which the libelous statements were not privileged. *Coleman v. MacLennan,* 78 Kan 711, 98 P 281 (1908). In this spirit, we adopt the maxim that two contrasting legal fictions cancel each other. On balance, the common law standard of culpability in libel actions for statements not privileged was liability without fault. This is so in Oregon. *See Wheeler v. Green,* 286 Or 99, 593 P2d 777 (1979).

publication of the instant article read as a whole. The article at issue contains statements that might be considered of public interest, but they are not of the type that the common law considered qualifiedly privileged. That being the case, notwithstanding the confusion regarding "malice" in common law libel actions, *see supra* note 2, at least some of the statements in the article, if proved false and defamatory, need not have been published with any level of culpability for the defendants to be liable for their publication. The common law would hold the instant defendants liable even if they were without fault.[3]

Defendants argue that Article I, section 8 of the Oregon Constitution precludes the imposition of liability without fault for a defamatory publication. Plaintiffs disagree and allege that Article I, section 10 of the Oregon Constitution requires that a remedy be provided for injury to reputation. Article I, section 8 provides:

> "No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

Article I, section 10 provides:

> "No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

A tension exists within Article I, section 8 between the right to communicate on any subject whatever and the abuse of this right. There is no basis under the Oregon Constitution to provide more protection to certain non-abusive communication based upon the content of the communication. Speech related to political issues or matters of

---

[3] As this review is of summary judgment for defendant, we assume the statements were false and defamatory. If any one of the 46 statements alleged by plaintiffs to be libelous was not privileged, under the common law summary judgment for defendant should not have been entered. Defendants claim that two distinct privileges obtain with respect to certain of the statements. They claim that certain statements were comments on judicial proceedings and thus privileged. *Peck* dictates that if such a claim is correct as a matter of law, the jury should be instructed accordingly. 122 Or at 422. Defendants also claim that certain statements were expressions of opinion based upon stated facts and thus are not actionable. If this claim is correct as a matter of law, the jury should be instructed accordingly.

"public concern" is constitutionally equal to speech concerning one's employment or neighbors, so long as that speech is not an abuse of the right. *See State v. Robertson,* 293 Or 402, 435, 649 P2d 569 (1982) ("The right of free expression is as important to many people in their personal and institutional relationships as it is in the narrower 'civil liberties' related to politics, and nothing in Article I, section 8, suggests that it is limited to the latter."). The Oregon Constitution does not recognize hierarchies of speech defaming someone, based on that person's access to the means of rebutting the defamation. The Oregon Constitution does not require a higher standard of proof in a defamation action where the plaintiff is a "public figure" rather than a "private individual."

■■ Article I, section 8 does not provide the media with any protection not available to other citizens. It is settled Oregon law "that in the absence of a statute, newspapers as such have no peculiar privilege but are liable for what they publish in the same manner as the rest of the community."[4] *Kilgore v. Koen,* 133 Or at 7 (rule consistent with the "liberty of the press" guaranteed by federal and state constitutions); *see Wheeler v. Green,* 286 Or 99, 117-18, 593 P2d 777 (1979) (Oregon Constitution does not mention separately a "freedom of the press"); *see also State ex rel Oregonian Pub. Co. v. Deiz,* 289 Or 277, 287, 613 P2d 23 (1980) (Linde, J., concurring) ("Freedom of expression, in Oregon, does not single out the professional press."). For that reason, any standard of liability in defamation cases required by the Oregon Constitution should be the same for all defendants.

No Oregon Supreme Court case interprets the standard of liability under the Oregon Constitution in a defamation action.[5] However, *Wheeler v. Green, supra,* recognized

---

[4] Oregon statutes do distinguish between media defendants and others. *See, e.g.,* ORS 30.150 to 30.175. These statutes provide that a defamation plaintiff may not recover general damages against a media defendant unless a correction or retraction of the publication is demanded but not published or the defamation was intentional. This statutory requirement does not violate Article I, section 10 of the Oregon Constitution. *Davidson v. Rogers,* 281 Or 219, 574 P2d 624 (1978); *Holden v. Pioneer Broadcasting Co.,* 228 Or 405, 365 P2d 845 (1961).

[5] *Wheeler v. Green,* 286 Or 99, 593 P2d 777 (1979), discussed the Oregon Constitution but only in the context of damages. It established that punitive damages in defamation actions are prohibited by Article I, section 8, and not required by Article I, section 10.

that statements constituting defamation "have throughout the history of this state been recognized as an abuse of the right of free expression for which a person is to be held responsible under the provisions of Article 1, § 8." 286 Or at 118.

Two recent cases have held that the common law standard of liability applies where the plaintiff is not a "public figure" and the defendant is not part of the media. *Wheeler v. Green, supra; Harley-Davidson v. Markley,* 279 Or 361, 568 P2d 1369 (1977).[6] These two decisions do not rest on the Oregon Constitution, but they are supported by Article I, section 10, which provides for "remedy by due course of law for injury [to] reputation." This provision does not require any certain standard of liability in defamation actions, *see David-son v. Rogers,* 281 Or 219, 574 P2d 624 (1978), but it does mandate "remedy by due course of law." The remedies provided during over a century of development of the common law of libel and slander, whether using a standard of actual malice or liability without fault, and the defenses developed by common law and provided for by statute, *see* ORS 30.160, are entitled to constitutional respect. We will not substitute a constitutional standard of liability, applicable in all cases, based on our review of the instant case. The Oregon Constitution does not impose such a minimum standard of liability.

■■ Defendants also argue that the First Amendment to the United States Constitution[7] requires a standard of liability higher than liability without fault in defamation actions. We agree to the extent that if the plaintiffs are "public

___

[6] The correctness of these decisions as a matter of *federal* constitutional law soon may be decided. The Supreme Court of the United States granted certiorari to review *Greenmoss Builders, Inc. v. Dun & Bradstreet, Inc.,* 143 Vt 66, 461 A2d 414 (1983). The Vermont Supreme Court, relying extensively on *Harley-Davidson v. Markley,* 279 Or 361, 568 P2d 1369 (1977), held that the federal constitution permitted a state to impose liability without fault if both plaintiff and defendant were "private individuals." The question presented is whether the rule in *Gertz v. Robert Welch, Inc.,* 418 US 323, 94 S Ct 2997, 41 L Ed 2d 789 (1974), prohibiting the state from imposing liability without fault on media defamation defendants, applies to "private" as well as media defendants.

[7] This amendment provides in part:

"Congress shall make no law * * * abridging the freedom of speech, or of the press * * *."

It is applicable to the states through the fourteenth amendment.

figures" for purposes of federal constitutional analysis, plaintiffs must prove the false and defamatory statements were published with actual malice; *i.e.,* knowledge of falsity or reckless disregard of truth. *New York Times v. Sullivan,* 376 US 254, 84 S Ct 710, 11 L Ed 2d 686 (1964); *see St. Amant v. Thompson,* 390 US 727, 731, 88 S Ct 1323, 20 L Ed 2d 262 (1968) ("high degree of awareness of * * * probable falsity"). If the plaintiffs are not "public figures" and the defendants are part of the media, plaintiffs must prove that the false and defamatory statements were made negligently. *Gertz v. Robert Welch, Inc.,* 418 US 323, 94 S Ct 2997, 41 L Ed 2d 789 (1974); *see supra* note 6.

■ We must first determine whether plaintiffs are "public figures" under federal caselaw interpreting the first amendment in defamation cases. The Supreme Court of the United States first addressed this concern in the consolidated cases of *Curtis Publishing Co. v. Butts,* 388 US 130, 87 S Ct 1975, 18 L Ed 2d 1094 (1967), and *Associated Press v. Walker,* 388 US 130, 87 S Ct 1975, 18 L Ed 2d 1094 (1967). The Court held that the privately employed athletic director and former coach of the University of Georgia football team (Butts) and a retired general who had actively participated in disturbances surrounding the admission of James Meredith to the University of Mississippi (Walker) were both "public figures." The Court stated:

> "Butts may have attained that status by position alone and Walker by his purposeful activity amounting to a thrusting of his personality into the 'vortex' of an important public controversy, but both commanded sufficient continuing public interest and had sufficient access to the means of counterargument argument to be able 'to expose through discussion the falsehood and fallacies' of the defamatory statements."

388 US at 155.

*Gertz v. Robert Welch, Inc., supra,* determined that an attorney who represented the family of a boy slain by a police officer was not a public figure. The Court reiterated its two-pronged standard for public figures and stated:

> "Absent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality

for all aspects of his life. It is preferable to reduce the public-figure question to a more meaningful context by looking to the nature and extent of an individual's participation in the particular controversy giving rise to the defamation."

418 US at 352. *See Time, Inc. v. Firestone,* 424 US 448, 96 S Ct 958, 47 L Ed 2d 154 (1976).

In *Hutchinson v. Proxmire,* 443 US 111, 99 S Ct 2675, 61 L Ed 2d 411 (1979), the Court established that the public controversy into which plaintiff may thrust his or her personality must pre-exist the defamatory publication. 443 US at 135. It cannot be created by the publication. Likewise in *Wolston v. Reader's Digest Ass'n, Inc.,* 443 US 157, 99 S Ct 2701, 61 L Ed 2d 450 (1979), the Court held that merely because events involving a private individual attract public and media attention does not transform that private individual into a public figure. 443 US at 167.

Defendants concede that no such pre-existing public controversy was present in the instant case. Those cases cited by defendants and amici which hold a business entity to be a public figure based on analysis of a thrusting into the vortex of a public controversy are inapposite. *See National Foundation for Cancer Research v. Council of BBB,* 705 F2d 98 (4th Cir), *cert. denied* 104 S Ct 108 (1983); *Steaks Unlimited, Inc. v. Deaner,* 623 F2d 264 (3d Cir 1980); *Trans World Accounts, Inc. v. Associated Press,* 425 F Supp 814 (ND Cal 1977); *American Ben. Life Ins. Co. v. McIntyre,* 375 So 2d 239 (Ala 1979) (on rehearing). There simply is no public controversy into which plaintiffs arguably thrust themselves. Merely opening one's doors to the public, offering stock for public sale, advertising, etc., even if considered a thrusting of one's self into matters of public interest, is not sufficient to establish that a corporation is a public figure. *See Golden Bear Distr. Systems v. Chase Revel, Inc.,* 708 F2d 944 (5th Cir 1983); *Bruno & Stillman, Inc. v. Globe Newspaper Co.,* 633 F2d 583 (1st Cir 1980); *Arctic Co., Ltd. v. Loudoun Times Mirror,* 624 F2d 518 (4th Cir 1980), *cert. denied* 449 US 1102 (1981); *Vegod Corp. v. American Broadcasting Companies,* 25 Cal 3d 763, 160 Cal Rptr 97, 603 P2d 14 (1979). Cases holding the opposite have been impliedly renounced by the Supreme Court's decisions in *Hutchinson* and *Wolston. See, e.g., Reliance Ins. Co. v. Barron's,* 442 F Supp 1341 (SDNY 1977) (relying in part on district court

decisions in *Hutchinson* and *Wolston* later reversed by Supreme Court). Neither plaintiff is a limited purpose "public figure."

Defendants argue that the Bank of Oregon is an all purpose "public figure." Three cases, supported by entirely different rationales, support this argument. *Martin Marieta Corp. v. Evening Star Newspaper,* 417 F Supp 947 (DDC 1976), concluded that corporations are public figures *per se,* and that the *Gertz* analysis of the public figure question does not apply to a corporation because it is based on the individual's personal reputation and the essential dignity and worth of every human being. 417 F Supp at 955. The Court applied the public interest standard of *Rosenbloom v. Metromedia,* 403 US 29, 91 S Ct 1811, 29 L Ed 2d 296 (1971), and thus found that defamatory statements made of a corporate plaintiff in a matter of public concern would be afforded the protection of the *New York Times* actual malice standard. This rationale is intriguing, but it should be rejected for the same reason that *Rosenbloom* was rejected by subsequent U. S. Supreme Court decisions: it involves courts in determinations of whether speech is of public concern or interest to too great an extent. *Dairy Stores, Inc. v. Sentinel Pub. Co., Inc.,* 191 NJ Super 202, 465 A2d 953 (1983), rejected the public figure analysis where the plaintiff is a corporation, and based its determination that the actual malice standard applies on an independent first amendment right to commercial and consumer information and the concomitant media right to convey such information. This analysis is not supported by federal defamation caselaw and for that reason will not be applied herein. *Coronado Credit Union v. KOAT Television,* 99 NM 233, 656 P2d 896 (Ct App 1982), considered a financial institution to be a public figure because that institution served the public, was regulated by state and federal authorities, and engaged in activities of interest to the public, which were of public concern. To the extent that the court held Coronado Credit Union to be an all purpose public figure, we reject its analysis in favor of a stricter application of the *Gertz* standard, which we believe is applicable and may be satisfactorily applied to a plaintiff which is a business entity. The Bank of Oregon does not present that "exceedingly rare" instance of an entity which is a public figure for all purposes. We find that the bank does not have "general fame or notoriety" in the community in which

the article was published nor does it exhibit "pervasive involvement in the affairs of society."

Defendants also argue that Wadsworth is an all purpose public figure. We agree with the Court of Appeals that this argument is "patently unmeritorious," especially in light of the recent emphasis on the limited purpose public figure analysis by the Supreme Court of the United States. Cases cited by defendants and amici in support of this argument are not helpful or persuasive. *See Ryan v. Brooks*, 634 F2d 726 (4th Cir 1980) (dicta); *Miller v. Transamerican Press, Inc.*, 621 F2d 721 (5th Cir 1980) (no analysis), *cert. denied* 450 US 1041 (1981); *Carey v. Hume* 390 F Supp 1026 (DDC 1975) (admitted) *aff'd* 543 F2d 1389 (DC Cir 1976).

Because neither plaintiff is a "public figure," the *New York Times* actual malice standard, knowledge of falsity or reckless disregard for truth, is not applicable in the instant case.

Therefore, we reach the other portion of *Gertz v. Robert Welch, Inc., supra,* which established that a state could not impose liability without fault on a media defendant, even where the plaintiff was a "private individual." There is no question that each of the defendants in the instant case is a media defendant, entitled without doubt to the protection provided in *Gertz*. In order to protect the first amendment rights of the instant defendants, plaintiffs must prove that the false and defamatory statements were made negligently, *i.e.,* without due care to ascertain whether they were true. In addition, *Gertz* mandates that "[i]t is necessary to restrict defamation plaintiffs who do not prove knowledge of falsity or reckless disregard for the truth to compensation for actual injury." 418 US at 349. The Court stated that "actual injury is not limited to out-of-pocket loss" but includes "impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." 418 US at 350.

The standard of care for those allegedly defamatory statements that require proof of negligence should be ordinary negligence, neither gross negligence as suggested by the trial judge nor the care of a reasonably prudent, careful and skillful journalist as held by the Court of Appeals. We agree with the Court of Appeals, however, that comparison of defendant's

conduct to a community standard is but one factor in determining whether the standard of care has been met. It remains possible that behavior which conformed to local practice would nevertheless be negligent.

Because plaintiffs need to prove that defendants were negligent in publishing the article, the trial court's denial of plaintiffs' motion to amend the complaint on the ground that negligence was not the proper standard was incorrect. Although the motion was also challenged on the basis that it was untimely, in determining the extent of a trial judge's ruling, we look to the order issued to dispose of the motion. *See State v. Swain/Goldsmith*, 267 Or 527, 530, 517 P2d 684 (1974). The order denying the motion to amend unequivocally was based on legal sufficiency, not timeliness. In any event, the transcript of the oral hearing shows that the ruling on the ground of legal sufficiency was made at defendant's request so that the resultant order could be appealed. It would be a strange result for this court to find, after that appeal process was complete, that the motion generating it was untimely. The motion to amend the complaint was incorrectly denied.[8]

Summary judgment is proper only where there is no "genuine issue as to any material fact for trial." ORCP 47D. Summary judgment for defendant should only be granted where the trial court is convinced that defendant's conduct meets the applicable standard of liability. *Uihlein v. Albertson's, Inc.*, 282 Or 631, 637, 580 P2d 1014 (1978). Because the standard of liability for at least some of the allegedly defamatory statements is negligence, summary judgment was not proper in the instant case. The trial judge expressly realized that if negligence were the standard, summary judgment was inapplicable. He stated: "There are facts to support ordinary negligence, but ordinary negligence is not the standard of liability * * *." There is no merit to the contention that summary judgment was nevertheless proper

---

[8] *Baker v. Brookmead Dairy, Inc.*, 230 Or 384, 386-87, 370 P2d 235 (1962), is consistent with our ruling herein. In *Baker,* the transcript revealed that "the trial court also weighed the circumstances of the delayed tender and the defendants' failure to support their motion with an affidavit in explanation of such delay." 230 Or at 386. Thus, we reviewed the trial court's denial of a motion for a new trial for abuse of discretion because it was founded on mixed grounds of timeliness and legal sufficiency. In the instant case, we believe the trial judge meant to limit the denial to the stated ground (legal sufficiency) and abandoned any previous intention to deny the motion on the ground of lack of timeliness.

because defendants presented uncontroverted expert evidence that defendants were not negligent. *See W. R. Chamberlin & Co. v. Northwestern Agencies,* 289 Or 201, 207, 611 P2d 652 (1980); *cf. Jones v. Jones,* 276 Or 1125, 557 P2d 239 (1976) (testimony of experts is received and weighed with caution).

The decision of the Court of Appeals is affirmed and the case is remanded to the circuit court.

**ROBERTS, J.,** concurring in part, dissenting in part.

I concur with the majority's analysis under the state constitution that Article I, section 8 provides no greater protection to media defendants as compared to other defendants. I also agree that Wadsworth is not a "public figure" for purposes of the federal constitutional analysis. I dissent, however, with regard to the Bank of Oregon. The bank meets the requirements of a "public figure" as that term has developed in federal dafamation jurisprudence.

The United States Supreme Court has held that media defendants enjoy a conditional constitutional immunity from liability for publication of defamatory falsehoods. *New York Times Co. v. Sullivan,* 376 US 254, 84 S Ct 710, 11 L Ed 2d 686 (1964). The conditional immunity applies if the defamatory statements concern public officials, *New York Times Co.,* or public figures, *Gertz v. Robert Welch, Inc.,* 418 US 323, 94 S Ct 2997, 41 L Ed 2d 789 (1974). In such cases, the plaintiffs must prove that the defaming defendants acted with malice. The federal Supreme Court has established the law of public and private plaintiffs with reference to individuals. It has not yet addressed the status of corporate plaintiffs. Lower federal courts, state courts and commentators have addressed the topic, however, and their analysis is compelling.

In *Coronada Credit Union v. KOAT Television,* 99 NM 233, 656 P2d 896 (1982), the credit union was found to be a public figure because it was chartered by law to serve members of the public, it was regulated by state and federal law, and its financial condition, the topic around which the defamation centered, was a matter of concern to the public. *Coronado* relied on a discussion of a corporation's status in the context of defamation by Sack, *Libel, Slander, and Related Problems* § V. 3.1.9. at 208 (1980):

"It seems clear * * * that any *publicly held* corporation is a

'public figure' for purposes of commentary about its corporate affairs. When a corporation 'goes public' by publicly offering its securities, it has taken a specific, voluntary action, the known result of which will be mandatory increased public scrutiny. The necessary consequence is publicity.

"It is consistent with both First Amendment policy and the aims of federal and state securities laws for commentary about such corporations to be encouraged and protected. Corporations subject to regulation by state or federal authorities are similarly 'public,' again inviting public scrutiny by voluntarily entering such businesses. And corporations that have the requisite level of dealings with government agencies may be 'public figures' for that reason alone. (Emphasis in original.) (Footnotes omitted.)

*American Ben. Life Ins. Co. v. McIntyre,* 375 So 2d 239 (Ala 1979) (per curiam), held an insurance company to be a public figure with the following analyis:

"We hold that an insurance company such as American Benefit is for purposes of our libel laws a 'public figure.' It cannot be successfully argued that a corporation whose dealings are subject to close regulation by our state government, and, indeed, whose very existence as an entity is owing to that government, does not invite attention and comment from the news media. The insurance business has long been held to be clothed with the public interest, \* \* \* and the power and influence of such a business over society cannot be ignored." 375 So 2d at 242. (Citation omitted.)

A commentator has examined the question of where corporations fit in the public vs private plaintiff analysis. She advocates the position that

"the corporate defamation plaintiff more nearly resembles the public figure than its private counterpart. A corporation is inherently less vulnerable to reputational injury than an individual and can utilize political and commercial speech to build its image and discredit its detractors. In addition, a corporation has voluntarily assumed the unique trappings of the corporate business form and, through the more public and formalized character of its inception and operation, has assumed the risks of free debate." Fetzer, *The Corporate Defamation Plaintiff as First Amendment "Public Figure": Nailing the Jellyfish,* 68 Iowa L Rev 35, 49 (1982). (Footnotes omitted.)

This author examined a 1908 Kansas decision, the

one cited in *New York Times Co. v. Sullivan, supra,* as the source of the public figure/private individual distinction. *Coleman v. MacLennan,* 78 Kan 711, 98 P 281 (1908), contains dictum indicating the scope of the public figure analysis. The case indicates that the analysis extends "to all officers and agents of government—municipal, state and national; to the management of all public institutions—educational, charitable and penal; to the conduct of all corporate enterprises affected with a public interest—transportation, banking, insurance, and to innumerable other subjects involving the public welfare." 78 Kan at 734.

Not surprisingly, a large insurance company with stocks traded on the New York Stock Exchange was held to be a public figure. *Reliance Insurance Co. v. Barron's,* 442 F Supp 1341 (SDNY 1977). The court stated: "By its very nature as a large publicly held, government-regulated corporation, and additionally because of its voluntary decision to make a public stock offering, Insurance has, in fact, thrust itself into the public eye." 442 F Supp at 1349.

*Martin Marietta Corp. v. Evening Star Newspaper,* 417 F Supp 947 (D DC 1976), applied the malice standard in a suit brought by the corporate plaintiff. The court found the corporation to be a public figure either in a limited sense because of the public controversy with which the corporation became involved, or in a broad sense because corporations are, for the most part, not deserving of the protections defamation law was meant to afford. First, the court analyzed *Rosenbloom v. Metromedia,* 403 US 29, 91 S Ct 1811, 29 L Ed 2d 296 (1971), a plurality opinion later rejected by a majority opinion in *Gertz v. Robert Welch, Inc., supra. Rosenbloom* held that a plaintiff who is neither a public official nor a public figure could nonetheless be required to prove malicious defamation on the part of a media defendant if the falsehoods concerned an issue of public importance.

*Rosenbloom's* shift in focus from the public character of the plaintiff to the public character of the issue was cut short in *Gertz v. Robert Welch, Inc., supra. Gertz* involved a private plaintiff. The media defendant attempted to apply the *Rosenbloom* analysis to bring itself within the conditional constitutional privilege for matters of public interest. *Gertz* rejected this approach, reasoning that the reputation of private individuals requires a greater degree of protection than

the reputation of public figures. This is because public figures have greater access to the media and are better equipped to counteract false statements. Public figures also have voluntarily placed themselves into public issues. One consequence of such exposure is increased risk of injury from defamatory falsehoods. *Gertz* describes individuals as public figures as follows:

> "Hypothetically, it may be possible for someone to become a public figure through no purposeful action of his own, but the instances of truly involuntary public figures must be exceedingly rare. For the most part those who attain this status have assumed roles of especial prominence in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved. In either event, they invite attention and comment." 418 US at 345.

It should be noted that the majority uses *Gertz's* reference to the rarity of "involuntary" public figures in support for its argument that the Bank of Oregon is not a public figure. Under my analysis, a corporation is considered a public figure because of its voluntarily assumed corporate activity.

The *Gertz* court found that the assumptions attributed to public figures are not justified with regard to private individuals.

> "[The private individual] has not accepted public office or assumed an 'influential role in ordering society.' * * * He has relinquished no part of his interest in the protection of his own good name, and consequently he has a more compelling call on the courts for redress of injury inflicted by defamatory falsehood. Thus, private individuals are not only more vulnerable to injury than public officials and public figures; they are also more deserving of recovery." 418 US at 345. (Citation omitted.)

*Martin Marietta* concluded that *Gertz* did not apply to corporations and *Rosenbloom* was still controlling. The inquiry then became whether the falsehoods concerned a matter of public interest. The court found that they did and applied the malice standard.

In some respects, the *Martin Marietta* analysis is

unsound. Attempting to define a "matter of public interest" is a notoriously slippery undertaking that leads the court into the questionable practice of measuring the public worth of a particular publication. Its reliance on *Rosenbloom* to rekindle the dying embers of the "public interest" standard is not persuasive. Nonetheless, *Martin Marietta* accurately distills the focus of the *Gertz* test:

> "[T]he 'public figure' standards set out in *Gertz* are designed to ascertain whether a person, through his activities, has lost claim to his private life. It makes no sense to apply these standards to a corporation, which, regardless of its activities, never has a private life to lose." 417 F Supp at 955.

There are certain characteristics of corporations which provide an objective standard by which to categorize the public or private nature of the enterprise. The degree of government regulation imposed on a corporation is perhaps the single most important determinant. As government regulation increases, so does the corporation's overall exposure to public scrutiny. Exposure comes in the form of disclosure and reporting requirements, administrative inspections and audits, and compliance with rules and regulations of public record for conducting business. Often, extensively regulated corporations deal in such essential commodities as transportation, finance and insurance. Their efficient management cannot be a matter solely of private institutional concern.

Not all corporations would fit this "public figure" model. Corporations subject only to the regulations established by state law for corporate existence would not become public figures by virtue of such minimum regulation alone.

The resolution of more difficult cases lying between these two extremes may await further refinement and need not be considered here. Banking is a pervasively regulated business in which public scrutiny is the norm. Defendants' article questioned the integrity of certain financial transactions of plaintiff bank, a topic of which public review is anticipated. I would hold the Bank of Oregon to the requirement to prove malicious defamation, and, with regard to this plaintiff, affirm the trial court.